HALL, Respondent, vs. THE AMERICAN MASONIC ACCIDENT
ASSOCIATION, Appellant.

*November 28 — December 29, 1893.*

*Accident insurance: Sole cause of death: Special verdict: " Grocer de-
livering goods by occupation:" Evidence: Res gestæ: Immaterial
error.*

1. In an action upon an accident insurance policy, although the medi-
cal testimony (somewhat stated in the opinion) was conflicting as
to the cause of the death of the assured, a finding by the jury that
an injury resulting from a fall was the sole cause of death is *held*
to be supported by the evidence.

2. An affirmative answer to the question, " Was such injury the sole
cause of death?" is *held* to be a finding that the injury was the sole
and proximate cause of the apoplexy which, it was conceded, was
the immediate cause of death; there having been no objection by
defendant to the questions submitted, and no request for a specific
question as to whether the injury was the cause of the apoplexy.

3. The jury were instructed that "a grocer delivering goods by occu-
pation," within the meaning of the classification of risks in the
policy, is one who habitually delivers, in person, goods sold to his
customers, and that an occasional delivery by himself — the rule
being that delivery is made by others — would not make him a
grocer delivering goods. There was no exception to this instruc-
tion. *Held*, that the finding that the assured was not "a grocer de-
livering goods by occupation" was supported by testimony that,
while he occasionally delivered goods, his son delivered the princi-
pal part of them.

4. A statement made by the assured as he lay upon the ground after
he fell, or when he was getting up, that "It was a hard one," or
" that he got a bad one," was admissible in evidence as of the *res
gestæ.*

5. A statement by the assured, a few hours after his fall, that he was
feeling badly, was admissible.

6. An error in admitting evidence of a statement by the assured, made
some time after the accident, that he was badly hurt, was not ma-
terial, that fact being conclusively proved by other evidence. WINS-
LOW, J., dissents, being of the opinion that the fact that the injury
was serious was not conclusively proven.

APPEAL from the Circuit Court for *Waupaca* County.

The action is upon an accident and life insurance policy, issued August 16, 1890, by the defendant, the *American Masonic Accident Association,* to Orin Hall, in which his wife, the plaintiff herein, is named as the beneficiary, to recover a death indemnity of $5,000. The risks taken by the company are classified with reference to employment and perhaps other conditions. Class E embraces a "grocer, proprietor or clerk, delivering goods," and the death indemnity therein is limited to $2,000. The maximum death indemnity in class A is $5,000, but not to exceed $2 for each member of the association in good standing at the time of the accident. In his application for the insurance, Orin Hall made the following statements and warranties: "Kind of business: General merchandise. Occupation: Merchant. Duties required fully described: Proprietor." It is conceded that if plaintiff is entitled to recover the insurance it is in class E or class A, and if it is not proved that Orin Hall was a "grocer delivering goods" the insurance is in class A.

The contract of insurance is that the plaintiff is entitled to recover the death indemnity only in case the death of her husband resulted from an injury effected through external, violent, and accidental means, which, independently of all other causes, produced his death; and, further, if the injury was received in any occupation or exposure classed by the association as more hazardous than he thus represented his occupation to be, the association is only liable for the sum it pays for such increased hazards.

Orin Hall was a resident of Waupaca, and had been such for several years before the policy in suit was issued, and until after April 29, 1892. He was proprietor of a store mostly for the sale of groceries. A witness thus testified concerning it: "There was a kind of miscellaneous lot of goods kept there for sale, mostly groceries, and a stock of

jewelry and fancy notions; a miscellaneous stock of crockery — that is, there was not much of that either, but a few tumblers, and such things as that — and plated ware." During the afternoon of April 29, 1892, when Mr. Hall was at the railway depot at Waupaca receiving freight into his wagon, and while standing in the hind end of his wagon, he accidentally fell to the ground between the wagon and the depot, and was injured. While still lying on the ground, or when just arising therefrom, he complained that he was badly hurt, or, as he expressed it, he "got a bad one." He got upon his wagon and drove to his store; went from there to his residence; returned to his store in the evening; then went again to his residence, and never left it thereafter alive. He suffered great pain, grew constantly worse, and died May 19th, three weeks after he was hurt.

No question arises on the pleadings. There was a special verdict, which indicates the defenses urged by the association. It is as follows: "(1) Did deceased receive an injury through external, violent, and accidental means? *Answer.* Yes. (2) If you answer the first question 'Yes,' was such injury the sole cause of death? *A.* Yes. (3) Did the accident occur, directly or indirectly, in consequence of chronic degeneration of the brain? *A.* No. (4) Was deceased a grocer delivering goods, by occupation, at the time. *A.* No. (5) Do you find generally in favor of the plaintiff or for the defendant,— which? *A.* Plaintiff."

At the time Mr. Hall was injured the association numbered 2,180 members in good standing. The court denied a motion on behalf of the association for a new trial, and gave judgment for plaintiff for $4,360, besides interest and costs. The case is further stated in the opinion. The association appeals from the judgment.

*M. C. Phillips,* for the appellant, to the point that by the "sole cause of death" is meant the proximate, i. e. that

cause which directly precedes and produces the effect, as distinguished from remote cause, cited *Lawrence v. Accidental Ins. Co.* in Richards, Ins. 522; *McCarthey v. Travelers' Ins. Co.* 8 Biss. 362; Cook, L. & A. Ins. sec. 49; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Accident Ins. Co. v. Crandal*, 120 U. S. 527; *Mallory v. Travelers' Ins. Co.* 47 N. Y. 52; *Martin v. Equitable Acc. Asso.* 61 Hun, 467.

For the respondent there was a brief by *Bump & Kreutzer*, and oral argument by *E. L. Bump*. Upon the question of the liability of the company in cases where the defense is interposed that death was caused by disease and that the injury was not the sole or proximate cause of death for that reason, they cited *Nat. Ben. Asso. v. Grauman*, 107 Ind. 288; *Barry v. U. S. Mut. Acc. Asso.* 23 Fed. Rep. 712; *Freeman v. Mercantile Mut. Acc. Asso.* 156 Mass. 351; *Standard L. & A. Ins. Co. v. Thomas*, 17 S. W. Rep. (Ky.), 275; *Martin v. Equitable Acc. Asso.* 61 Hun, 467; *Travelers' Ins. Co. v. Murray*, 16 Colo. 296; *Peck v. Equitable Acc. Asso.* 52 Hun, 255; 22 Cent. Law J. 413, 436; 27 id. 158, 284; *Accident Ins. Co. v. Crandal*, 120 U. S. 527.

LYON, C. J. No exception was taken to the charge given by the court to the jury, nor to the refusal of the court to give certain instructions proposed on behalf of the defendant association. Hence, for the purposes of the case, it must be assumed that the court stated the law correctly to the jury. The grounds alleged for a reversal of the judgment will be stated and disposed of in their order.

1. It is maintained that there is no sufficient evidence to support the finding that the injuries received by Orin Hall on April 29, 1892, were the sole cause of his death, but that on the contrary the proof is conclusive that the primary cause of his death was long-standing disease and degeneracy of the brain, producing apoplexy, which it is conceded was the immediate cause of death.

Hall vs. The American Masonic Accident Ass'n.

Two physicians and surgeons were called as witnesses by each party, and gave testimony as experts. Those called by the plaintiff were Dr. Pelton (who attended Mr. Hall as his physician from the time he was injured until his death) and Dr. Russell. Those called for the defendant were Dr. Hendricks, professor of anatomy in the University of Minnesota, and Dr. Oviatt. A post-mortem examination of Mr. Hall's brain was made by Drs. Hendricks and Pelton in the presence of Dr. Russell. We shall not attempt to state much of their testimony or to discuss it at any considerable length.

The medical witnesses appeared to be gentlemen of culture and professional ability, and to have testified honestly; yet they differ radically in their statements of facts concerning the condition of the brain of Mr. Hall, and in their opinions as to the causes and effects of those conditions. Thus, the testimony of Drs. Pelton and Russell is to the effect that Mr. Hall's fall from the wagon might have caused, and probably did cause, concussion and contusion of the brain, which finally resulted in apoplexy and death. They both testify that in their opinion the injury was the proximate cause thereof. Their opinions are strengthened by the fact that there is sufficient testimony (although controverted) to support a finding that Mr. Hall enjoyed his usual good health up to the time he was injured, and showed none of the indications of degeneration of the brain which all the physicians agree attend that disease. Besides, Dr. Pelton saw Mr. Hall daily, frequently several times the same day, from the time he was injured until he died, and thus had the best possible opportunity to watch his symptoms and to form a correct judgment of the real cause of his death.

On the other hand, Dr. Hendricks testified to the existence of degeneracy of the brain and a diseased condition of certain arteries, which in his opinion were of long standing,

and caused the death of Mr. Hall, independently of the injury. On the hypothesis that Dr. Hendricks diagnosed the case correctly, Dr. Oviatt agreed with him as to the cause of death.

The medical witnesses differ as to whether the seat of the apoplexy was in the cerebrum or cerebellum; also, as to the extent and chronic character of the alleged degeneracy of the brain, and the existence of diseased arteries. Some degeneracy of the cerebrum, or large brain, was proved, but if the effusion of blood which caused the apoplexy and death was in the small brain, or cerebellum, it is quite obvious that such disease of the large brain was not the cause of death. It is not claimed that there was any chronic disease of the small brain. We think the testimony is sufficient to support findings that, when Mr. Hall was injured, the cerebellum, or small brain, was in a healthy condition, and that his fall produced such concussion or contusion thereof that the injury culminated in an effusion of blood thereon, which produced apoplexy and death, without the intervention of any other independent or proximate cause. Hence, the finding that the injury was the sole cause of the death of Mr. Hall is supported by the evidence.

2. Another error assigned is that the special verdict does not determine all the material litigated issues of fact. If we understand the argument correctly, it is that, inasmuch as it is conceded that apoplexy was the immediate cause of death, a further question should have been submitted to the jury as to whether the injury was the proximate and sole cause of the apoplexy. In the absence of any request on behalf of the association to have such question submitted, and of any objection or exception to the questions which were submitted to the jury, we think it should be held that the question above suggested is included in the second question, "Was such injury the sole cause of death?" and the affirmative answer to that question is a finding that the

injury was the proximate and sole cause of the apoplexy. We conclude that the special verdict includes all controverted material issues of fact in the case, and supports the judgment for plaintiff.

3. It is sufficient to say of the third finding, which is that the injury was not caused, directly or indirectly, by any chrónic degeneration of the brain, that such finding is abundantly supported by the evidence.

4. The fourth finding is that, when injured, Mr. Hall was not "a grocer delivering goods by occupation." The effect of the finding is that his occupation did not place the insurance in class E, in which the death indemnity is limited to $2,000, but left it in class A, in which the maximum death indemnity is $5,000. This finding is attacked on the ground that the evidence does not support it, but proves conclusively that, when injured, Mr. Hall was by occupation "a grocer delivering goods."

The court instructed the jury that "a 'grocer delivering goods,' as expressed in the contract in suit, is one who is engaged as a dealer in groceries, and habitually delivers, in person, goods sold to his customers. An occasional delivery by himself — the rule being that delivery is made by others — would not make him a grocer delivering goods." In the absence of exception to the instruction, such is the law of this case, and is probably good law in any case. The testimony on the subject is somewhat conflicting, but one witness, who was entirely familiar with Mr. Hall's business methods, testified that he occasionally delivered goods, but that his son Charles, he thought, delivered the principal part of them. It appeared that Mr. Hall himself usually received goods at the depot which were consigned to him, and hauled them to his store, but it is not claimed that this was delivering goods within the meaning of the policy. It was competent for the jury to believe the above testimony, and it supports the fourth finding. It requires no argu-

ment to show that the judgment is in strict accordance with the special verdict.

5. It is claimed that the court admitted testimony on behalf of plaintiff of Mr. Hall's statements of the circumstances of the injury he received, made a considerable time after he was injured, and when such statements were no part of the *res gestæ*. This court has uniformly held testimony of that character inadmissible. It is needless to cite the cases affirming that rule. An examination of the testimony which it is claimed violates such rule is necessary.

Mr. Bea was present when Mr. Hall was hurt, and testified that as the latter lay upon the ground after he fell, or when he was getting up, he said, "It was a hard one," or "that he got a bad one,"— meaning, of course, that he was badly hurt. Such statement, thus made, was of the *res gestæ*, and admissible in evidence under all the authorities.

Mr. Kingsbury, who was Mr. Hall's clerk, was permitted to testify, under objection, that, when Mr. Hall returned to his store after he was hurt, witness asked him, "What is the matter?" and he replied, "I am hurt awful bad." This was inadmissible, for such statement was not of the *res gestæ*. But its admission could not possibly have injured the defendant, because the proof is entirely conclusive that Mr. Hall was badly hurt. Hence, the error in admitting such statement is not sufficient ground for reversing the judgment, for it tended to prove nothing that is not conclusively proved without proof of such statement, and hence could not have affected the verdict.

The same remarks are applicable to the testimony of Mr. James to a conversation with Mr. Hall at his store on the evening after he was injured. The witness testified that Mr. Hall said: "'I am feeling badly; I met with an accident.' I says, 'What is it?' He said, 'I fell at the depot.'" It is conclusively proved that Mr. Hall met with an accident, and that he fell at the depot. Proof of his statement

that he was feeling badly was competent. *McKeigue v. Janesville*, 68 Wis. 50, and cases cited in the opinion. Plaintiff was allowed to testify, not, as stated by counsel, that her husband said, after he reached home, his *hurt* was terrible, but that his *head* was terrible. This was admissible under the rule just stated.

It is believed that the foregoing observations dispose of all the material errors alleged as grounds for reversal. We fail to find that any of the alleged errors are well assigned. The judgment of the circuit court must be affirmed.

WINSLOW, J. I think this judgment should be reversed because of the erroneous admission in evidence of statements made by the deceased as to the extent of his injury, made a considerable time afterwards, and which were not a part of the *res gestæ*. The question as to whether the injury was serious or not was a very important one in the case, and seemed to me by no means conclusively proven.

*By the Court.*— Judgment affirmed.