Rideout v. Winnebago Traction Co. 123 Wis. 297.

RIDEOUT and another, Administrators, Respondents, vs. WINNEBAGO TRACTION COMPANY, Appellant.

*November 16—December 13, 1904.*

*"Negligence": "Gross negligence": Pleading: Indefiniteness: Uncertainty: Evidence: Election of remedies: Appeal and error: Instruction to jury: Special verdict: Inconsistent findings: Judgments.*

1. The term "negligence" by itself suggests only inadvertence or want of ordinary care, and however great may be the degree of such want of care, so long as the element of inadvertence remains, willfulness is excluded.

2. The term "gross negligence" signifies willfulness. It involves intent, actual or constructive, which is a characteristic of

criminal liability. If one is guilty of inadvertence causing injury to another, that one's fault is denominated want of ordinary care. If one is guilty of willful misconduct causing actionable injury to another, the former's fault is denominated "gross negligence."

3. Since in the first case suggested intention to do the injury, actual or constructive, must be absent and in the second case present, a complaint using language to describe defendant's fault appropriate to both species of misconduct, as if they occurred at one and the same time, and that one included the other, is indefinite and uncertain.

4. Gross negligence does not include ordinary negligence, and proof of the former does not prove but rather disproves the latter.

5. Where a complaint is indefinite and uncertain because of the pleader's confusing the element of advertence with that of inadvertence, ordinary negligence with gross negligence, and the attention of the trial court is called thereto, though not in the most approved manner, it should compel the plaintiff to proceed upon one theory or the other, if both theories can be reasonably spelled out of the pleadings, or give such permissible construction to the pleadings as to confine plaintiff's claim to one species of wrongdoing.

6. Where a complaint has a double aspect rendering it indefinite and uncertain, as above indicated, it is error to submit the cause to the jury upon both aspects, and in case error is committed in that regard resulting in a verdict in favor of the plaintiff upon the ground of gross negligence and ordinary negligence as well, it is error to render judgment thereon because of inconsistency in the findings.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Action for damages for the alleged wrongful killing of plaintiff's intestate. The circumstances stated as a ground for a recovery are substantially these: From June 22, 1897, up to and inclusive of the event complained of defendant was a corporation duly organized under the laws of this state, and authorized to operate an electric street railway on various streets, including Merritt street, in the city of Oshkosh, Wisconsin. August 24, 1903, the Uniformed Rank, Knights of

Pythias in such city, some being on foot and some being in carriages,—one of the former being Christian Sarau,—marched in parade formation along the street specially mentioned, escorted by a military band of twenty-four pieces discoursing music. Some of the marchers, including Sarau, in the exercise of ordinary care walked between the rails of defendant's track located on such street, and others walked on either side thereof. While so doing defendant's servant with one of its cars approached the procession from the rear at a dangerous rate of speed, without giving any sufficient warning to the marchers to yield the right of way before reaching them. The car going at such dangerous rate of speed, without sufficient warning being given as aforesaid, was carelessly, negligently, recklessly and wantonly propelled into the space occupied by the marchers and on to and over said Sarau, causing injuries from which he on the same day died.

Sarau suffered great mental and physical pain from the instant he was injured till death occurred, and plaintiffs as his personal representatives were put to great expense by reason of such wrongful conduct for medical and surgical care of and attendance upon Sarau, and for nursing and hospital bills.

Several times in the complaint the conduct of the defendant's servant, who controlled the car, was characterized as careless, negligent, reckless, wilful and wanton, or by words of similar import. Allegations were made appropriate to a cause of action for damages to Sarau, which survived to his personal representatives, and also a cause of action for damages to his surviving relatives, the whole amount claimed being $10,000.

Defendant answered putting in issue the allegations of the complaint as to its servant having negligently operated the car on the occasion in question, and pleaded as the proximate cause of the injury and death of Sarau,—want of ordinary care on his part.

It fairly appears from the record, in harmony with the ·claim of respondents' attorneys upon the argument of the ·case in this court, that respondents' right to recover was intended to be grounded on gross negligence. The court, nevertheless, refused to construe the complaint in harmony therewith, and submitted the cause to the jury for specific findings ·covering the subject of liability for ordinary negligence, and for gross negligence as well. The result was the following · verdict:

(1) Sarau came to his death by injuries received at the time and place alleged in the complaint. (2) Defendant's ·employees were guilty of want of ordinary care and prudence in operating the car at the time of the accident. (3) Such want of ordinary care and prudence was the proximate cause of the injury to Sarau. (4) The motorman was ·guilty of gross negligence; his conduct was malicious, wanton and reckless, evincing a disregard of consequences to others. ·(5) The car was going at a speed of fifteen miles an hour when it ran through the band, before it reached Sarau. (6) He could not have seen the car approaching him in time to have avoided the collision. (7) The motorman did not try to stop·the car upon its becoming apparent to him that it would strike Sarau. (8) When the accident · occurred the car was running at the rate of fifteen miles an hour. (9) Want of ordinary care on Sarau's part did not contribute to produce the injury. (10) Damages were caused by the occurrence, for doctors' bills and hospital bill, $75, funeral expense $421, physical pain and mental suffering of Sarau ·$500, loss to his surviving relatives by his death $4,500.

After the coming in of the verdict the court changed finding 6 so as to decide that Sarau could have seen the approaching car in time to have avoided the collision.

Exceptions were duly taken to preserve for review numerous questions, including those discussed in the opinion, so :far as exceptions were necessary in that regard. Judgment

was rendered in plaintiff's favor on the verdict, from which this appeal was taken.

For the appellant there were briefs by *Weed & Hollister,* attorneys, and *Charles Barber,* of counsel, and oral argument by *Mr. H. I. Weed* and *Mr. Barber.*

For the respondents there were briefs by *Bouck & Hilton* and *A. E. Thompson,* and oral argument by *Mr. John F. Kluwin* and *Mr. Thompson.*

MARSHALL, J.   It seems that from the time of drawing the complaint to the entry of judgment there was want of appreciation of the broad distinction between ordinary negligence and intentional wrongdoing, the former being characterized by inadvertence and the latter by advertence, the one requiring intent, actual or constructive to injure, and the other being inconsistent therewith. Under the decisions of this court, and by the better rule, it is believed, prevailing whenever the doctrine of comparative negligence does not prevail, as it does not here, that species of wrong, which has been denominated in this and some other jurisdictions gross negligence, is impossible if there is mere want of ordinary care.    Therefore to charge that an alleged wrongdoer was guilty of one species of wrongful conduct, and allow a recovery for guilt of the other, or to charge both as characterizing the same wrongful act and allow a general recovery is wrong. A pleading with such an infirmity is indefinite and uncertain and open to a motion on that ground.  The practice of charging that one caused injury to another by careless, negligent, wanton and wilful misconduct, or of using language of similar import in attempting to state a cause of action is improper.   This court so held, in effect, in *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446, and cases there referred to, and so held expressly in *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536.   In the former this language was used:

"Inadvertence, in some degree, is the distinguishing characteristic of negligence, while misconduct of a more reprehensible character, characterized by rashness, wantonness and recklessness of a person as regards the personal safety of another, has been designated by this court as gross negligence," That involves "a sufficient degree of intent at least to be inconsistent with inadvertence."

In the last case cited this court said of the effect of the decision in the *Bolin Case* as to a wrong of this nature (one alleged to have been characterized by wantonness and willfulness) :

"There is really no element of inadvertence, which is a necessary element of negligence, and hence the term 'gross negligence,' as applicable to this class of wrongs, is inaccurate. The conclusion is that when this kind of wrong is charged, as in the present case, though it be called 'gross negligence,' it does not logically include ordinary negligence any more than a charge of ordinary negligence includes intentional wrong."

In *Decker v. McSorley,* 116 Wis. 643, 93 N. W. 808, it was said that:

"No degree of mere carelessness or inadvertence constitutes gross negligence or willful misconduct."

And in *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 85 N. W. 663, that:

"It is obvious that no degree of mere carelessness or inadvertence, however remote from the care customarily used either by the ordinary careful man or by the exceptionally careless one, constitutes gross negligence." The latter suggests necessarily intent, either actual or constructive, to cause injury, or "conduct evincing a total disregard for the safety of persons or property."

The doctrine above indicated is not supported by authorities universally, though the want of harmony will be generally found to grow out of the fact that the doctrine of comparative negligence prevails in some jurisdictions and not in others. Authorities on both sides of the question are cited in

*Wilson v. Chippewa Valley E. R. Co., supra.* The idea that gross negligence is inconsistent with ordinary negligence seems to be the logical result of such a distinction between the two species of wrongs as to render it impossible for the element of inadvertence to be common in both. It were better if the term "gross negligence" as suggesting inadvertence had never been used in speaking of a wrong, having the element of intent, actual or constructive, to injure. The supreme court of Indiana in treating this subject in *Louisville, N. A. & C. R. Co. v. Bryan,* 107 Ind. 51, 53, 7 N. E. 807, 808, used this language:

"To constitute a willful injury, the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is *quasi*-criminal. . . . The words 'careless' and 'negligent' used in conjunction, have not always been employed with strict regard for accuracy of expression. To say that an injury resulted from the negligent and willful conduct of another, is to affirm that the same act is the result of two exactly opposite mental conditions. It is to affirm in one breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely and by design. . . . It is only necessary to say that the distinction between cases falling within the one class or the other, is clear and well defined, and cases in neither class are aided by importing into them attributes pertaining to the other."

In *Cleveland, C., C. & St. L. R. Co. v. Miller,* 149 Ind. 490–501, 49 N. E. 445, 449, that court said:

"The two terms ('negligence' and 'willfulness') are incompatible. Negligence arises from inattention, thoughtlessness, or heedlessness, while willfulness cannot exist without purpose or design. No purpose or design can be said to exist where the injurious act results from negligence, and negligence cannot be of such a degree as to become willfulness. . . . The doctrine of comparative negligence does not obtain recognition in this state . . . and when willfulness

is the essential element in the act or conduct of the party charged with the wrong, the case ceases to be one of negligence. Willfulness and negligence are the opposites of each other; the former signifying the presence of intention and the latter its absence."

To the same effect are *Parker v. Pennsylvania Co.* 134 Ind. 673, 34 N. E. 504; *Highland A. & B. Railroad Co. v. Winn,* 93 Ala. 306, 9 South. 509; *Louisville & N. R. Co. v. Johnston,* 79 Ala. 436; *Levin v. M. & C. R. Co.* 109 Ala. 332, 19 South. 395; *Wabash R. Co. v. Speer,* 156 Ill. 244, 40 N. E. 835; *Ruter v. Foy,* 46 Iowa, 132; *Matthews v. Warner's Adm'r,* 29 Grat. 570; *Denman v. Johnston,* 85 Mich. 387, 48 N. W. 565; *Menger v. Laur,* 55 N. J. Law, 205, 26 Atl. 180; and 7 Am. & Eng. Ency. of Law (2d ed.) 443. From the foregoing it will be seen that in charging liability, either springing from the want of ordinary care or an intentional wrong, causing personal injury to one, nothing is to be gained by a multiplicity of adjectives or adverbs. When it is stated that the wrongdoer failed to exercise ordinary care in a case grounded on ordinary negligence, or that he acted willfully in a case based on gross negligence, so called, nothing in any circumstances can be added by otherwise characterizing the wrong, except by way of emphasis, which of course is immaterial to the liability, or the measure thereof. In confusing the two species of wrong, as if one was of the same character as the other, only greater in degree, there is liability of rendering the pleading indefinite and leading to a fatal variance between it and the proof and also to an inconsistent verdict.

There was an objection here to any evidence under the complaint because of uncertainty of the nature above spoken of. The theory of appellant's counsel seems to have been then, and to be still, that the charge of inadvertent conduct and of willfulness neutralized each other, rendering the complaint insufficient to state any cause of action. We think otherwise.

In a case of this kind, while it is true a charge of gross negligence will not warrant a recovery on the ground of ordinary negligence, even though accompanied by an allegation that plaintiff was in exercise of ordinary care at the time of the occurrence complained of, it does not necessarily follow that a charge including both elements of wrongful conduct is meaningless. If very strict technical rules of pleading were applied it might be otherwise. Under the proper rule every reasonable intendment is to be considered in favor of, the pleading and everything essential to the cause of action sought to be stated, reasonably inferable from the language used, is to be deemed as effectually pleaded as if expressly alleged. Sec. 2668, Stats. 1898; *Morse v. Gilman,* 16 Wis. 504; *Flanders v. McVickar,* 7 Wis. 372; *Horn v. Ludington,* 28 Wis. 81; *Merrill v. Merrill,* .53 Wis. 522, 10 N. W. 684; *Miller v. Bayer,* 94 Wis. 123–126, 68 N. W. 869; *South Bend C. P. Co. v. George C. Cribb Co.* 97 Wis. 230, 72 N. W. 749. Or as stated thus in some of the cases cited:

"If the essential facts can be gathered from the pleading or may reasonably be inferred from the allegations it is good though such allegations be in form uncertain and incomplete."

It is considered that a charge that an act was negligently, carelessly and willfully done, or done negligently, carelessly and in disregard of consequences as to the personal safety of others, though open to a motion to make more definite and certain by removing the feature rendering it necessary to determine by construction what character of wrong is relied upon may reasonably be said to charge gross negligence. Therefore the objection to evidence under the complaint was properly overruled. However, since the objection directed attention to a probability that the pleader may have intended to charge both ordinary negligence and gross negligence, to set forth two causes of action of a somewhat inconsistent character, the court in overruling it should have con-

strued the complaint, and shaped the trial accordingly. In *Wilson v. Chippewa Valley E. R. Co.* 120 Wis. 636, 98 N. W. 536, this court construed a complaint charging an alleged wrongful act to have been perpetrated negligently and willfully as stating a cause of action involving gross negligence, and tested the sufficiency of the verdict thereby, holding, that upon such complaint there cannot be a recovery on the ground of ordinary negligence, consistent with *McClellan v. Chippewa Valley E. R. Co.* 110 Wis. 326, 85 N. W. 1018, where it was decided that in a complaint charging ordinary negligence there can be no recovery on the ground of gross negligence.

The practice adopted here of declining to construe the complaint as to the particular species of wrongdoing intended to be charged therein and confining plaintiff thereto, and permitting a recovery upon the ground of ordinary and gross negligence as well, is very reprehensible. To allow such a practice to gain a foothold in our system would lead to prejudicial confusion and uncertainty in the administration of justice. The jury were directed to find as to issues appropriate to two distinct and somewhat inconsistent causes of action, when the complaint should have been construed as charging but one. It should have been held to state a cause of action for gross negligence. We have a verdict finding that degree of wrong, and in effect finding that a lesser degree was the proximate cause of the injury. It may appear somewhat technical to hold that such a verdict presents a well-defined and fatal inconsistency, but the practice contemplated by the Code that the plaintiff shall state, understandingly to the defendant and the court, the facts as to the cause of action he relies upon, and if there are two causes that they shall not be inconsistent, and that the recovery shall be in harmony therewith, is so invaded by that adopted by the trial court that we feel constrained to condemn it, not overlooking sec. 2829, and the scope thereof, as declared by this

court, in saving judicial decisions from disturbance regardless of errors not affecting the substantial rights of the adverse parties.

Since no recovery can be sustained under the complaint for ordinary negligence, all questions presented upon the appeal, appertaining to the subject of contributory negligence of Sarau, are immaterial and will therefore not be considered. If the injury was caused by gross misconduct of appellant's servant, conduct involving at least constructive intent to do the act complained of, whether Sarau did or did not exercise ordinary care to protect himself does not affect the right of respondents to recover, either for the damages caused to the deceased or to the surviving relatives. *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333, 84 N. W. 446.

The point is made that there was no evidence of willful misconduct on the part of appellant's servant, who controlled the car, and therefore a verdict should have been directed in appellant's favor. It seems to us otherwise. There was evidence tending to show that when the car reached a point where the motorman was in full view of the marchers, and for a considerable period of time thereafter, he must have observed the danger those in its pathway were in and had ample opportunity to guard against it; that he must have seen that the marchers were proceeding entirely unconscious of the approach of his car; that with the noise of the band and other noises made by them it was quite improbable that they would, or might not, observe the car in time to give way for it to pass; that by repeated signals from the conductor he was directed to slacken the speed of the car, and if necessary stop it before reaching the space occupied by the marchers, and that, nevertheless, he made no effort to do so until it had traveled through a large part of such space and up to within a few feet of Sarau, at the rate of fifteen miles per hour, or about twenty-two feet per second. A jury might well find under such circumstances conscious disregard of human life,

rendering the wrongdoer in case of a destruction thereof guilty of manslaughter in a criminal action, and of willful misconduct in a civil action. True, the car had the right of way and it was the duty of the marchers to step aside so as not to interfere with its passage or speed. True, it was the duty of the marchers, as is ordinarily the case, to use their senses reasonably, to enable them to do that before the car came dangerously near them, and yet no excuse is seen for an assertion of a superior right in appellant by consciously running its car into the parade at a speed of twenty-two feet per second.

A person with Sarau at the place of the injury when he regained consciousness in answer to this question, "What did he say if anything that would indicate pain and suffering?" said:

"He raised his right leg, at that time he knew he was hurt and he didn't know whether his leg was off or whether it was cut although he felt the pain and he thought they were either squeezing it or doing something to it and he wanted us to let go, seeing we didn't let go he raised his right leg and tried to kick us and we held his right leg down."

It is easily seen that the answer is not responsive to the question. Error is assigned because the court refused to strike it out. Whether appellant was, or may have been, prejudiced thereby does not clearly appear. As a rule unresponsive answers by a witness should be promptly stricken out, upon a motion being seasonably made therefor. The orderly conduct of trials requires that litigants shall have a reasonable enforcement of that rule. '

Several witnesses were permitted to testify to what they heard Sarau say, or do, or how he acted shortly after he was injured, some of the occurrences being while he was on the way to the hospital from the place of the injury, and some immediately upon, or soon after, his arrival at the hospital, indicating that he was conscious and suffering pain. That.

was proper. Exclamations and expressions such as commonly, under the circumstances, evince suffering, the conditions being such as to indicate reality, may be testified to by a person having knowledge thereof upon the ultimate fact which they suggest becoming a proper subject of inquiry. Such evidence falls within the rules allowing all parts of the *res gestæ* as to a subject of judicial inquiry to be given in evidence. *Hall v. American M. A. Asso.* 86 Wis. 518, 57 N. W. 366; *McKeigue v. Janesville,* 68 Wis. 50, 31 N. W. 298; *Quaife v. C. & N. W. R. Co.* 48 Wis. 513, 4 N. W. 658; 1 Greenl. Evidence, § 102, and Jones, Evidence, § 252. The doctrine that a person's state of mind as to existing pain can be so established necessarily includes establishing consciousness. Both matters were material in this case. One could not readily suffer pain without possessing some degree of consciousness. The indications of one would ordinarily evince the other. But independently of that, doubtless, the state of a person's mind as regards consciousness, when material, may be established by the species of evidence competent to establish the fact of suffering pain.

Evidence was permitted as to what the duties of a motorman were, operating a car manned by a conductor, as in this case. The question was evidently not aimed at what the duty of the motorman was, as a matter of law, but as to what the incidents of his position were in that regard under the contract of employment. Presumably, the purpose of the question was to show that he was not required to do anything interfering with observing the situation of those upon the track in the pathway of his car on the occasion in question, and that he recklessly and consciously disobeyed the conductor's orders to stop the car before the event complained of. The bearing of the evidence was on the claim of willful misconduct imputable to appellant. In that light we see no reason why the evidence was not proper.

Further complaint is made because evidence was permitted

as to the schedule time for running cars the week before the accident. We are unable to see how appellant could possibly have been prejudiced by that. There was no claim that the speed of the car on the day of the accident was greater than usual. The only difference in the schedule on that day and on the week prior thereto, was that on the former, contrary to the latter, the cars were operated one way only, giving patrons the benefit of two opportunities to go in that direction in the time ordinarily occupied by a trip down the track and return. It was certainly proper to show the manner in which cars were operated at the time of the injury, and that there was a special arrangement for the occasion for the better convenience of patrons.

Error is assigned because one, who was in the procession some distance behind Sarau, was permitted to testify that as the car passed him, he said "For God's sake stop that car!" It was then in dangerous proximity to Sarau. The exclamation was made within hearing distance of the motorman. He may, or may not, have heard it. It was within the probabilities that he did. So the evidence, though not competent to show the speed of the car, or that it was going at a dangerous rate of speed, was competent as bearing on the question of whether the motorman operated the car in conscious disregard of the safety of others.

One of the marchers, who was some distance behind Sarau, having testified, without objection, that seeing the danger to those on the car track, he stepped forward to take hold of some of them, his idea being to run on to the track for that purpose, but that there was no show and he stepped back, was permitted to answer a question as to why there was no show. The answer was not strictly responsive thereto, but there was no motion to strike it out. The question merely asked for an explanation of previous evidence. No reason is suggested, or is perceived, why that was not proper. A number of other

rulings on evidence adverse to appellant are referred to in the briefs of counsel. We have given such attention thereto as seems to be required without discovering any prejudicial error therein.

Complaint is made because the court did not submit the following questions to the jury, as requested: "Did the motorman sound the gong continuously while approaching Sarau?" "At what rate of speed was the car running when it ran into the Milwaukee Uniformed Rank, Knights of Pythias?" It is a sufficient answer thereto to say that the questions only involve evidentiary circumstances, not issues of fact raised by the pleadings, within the meaning of sec. 2858, Stats. 1898; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; and *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467. There is no allegation in the complaint or the answer as to whether the gong of the car was continuously sounded while the car was approaching Sarau, or at what rate of speed it was going at the time of the injury. The allegations of the complaint are to the effect that it was then moving at a dangerous rate of speed, and that due and sufficient warning was not given to persons in the pathway thereof to give way for its passage. These allegations were put in issue by denials, and in addition defendant answered that as the car approached the point where the injury was inflicted, a sufficient warning of its presence was given by sounding the gong and bell on the car. So the real issue raised was whether the car, under the circumstances, was approaching at a negligent rate of speed, and whether sufficient warning was given to persons in its pathway to clear the track for its passage. These matters were, though not in the most approved form, included in the questions submitted.

Error is assigned because the court refused to instruct the jury that had Sarau lived his earning capacity would prob-

ably have decreased with advancing years. It would seem that appellant could not have been prejudiced by a failure to instruct on such a matter of common knowledge.

Further error is assigned for a refusal to instruct the jury that the probable earning capacity of Sarau should be considered with reference to his capacity in that regard, taking into consideration his personal expenses, income from property not being considered. The general instructions so informed the jury. That being the case there was no error in refusing to specially instruct as to the same matter.

Some complaint is made of remarks by respondents' counsel during the argument to the jury, which do not appear to merit special attention. The exceptions in regard thereto have been sufficiently examined to satisfy us that at least no prejudicial error was committed in respect to such matters.

The judgment must be reversed and the action remanded for a new trial of the cause of action for gross negligence, it being understood that the issues appropriate thereto are the only ones which the complaint justifies submitting to a jury for determination. It is unfortunate that a verdict was taken, which in effect found that such a wrong produced the death of Sarau, and that it was also produced by a wrong of an entirely different character.

*By the Court.*—The judgment appealed from is reversed, and the cause is remanded for further proceedings in accordance with this opinion.