REBHOLZ, Plaintiff and Respondent, vs. WETTENGEL, Defendant and Appellant, and LEONHARD, Impleaded Defendant and Respondent.

*March 8—April 11, 1933.*

For the appellant there was a brief by *Carpenter & Jenkins* of Stevens Point, attorneys, and *Shaw, Muskat & Paulsen* of Milwaukee of counsel, and oral argument by *L. N. Jenkins.*

For the respondents there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *William E. Fisher.*

FRITZ, J. It is undisputed that injuries were sustained by plaintiff while she was a passenger, on the afternoon of January 10, 1932, in a Ford sedan operated by the inter-

pleaded defendant, Norman Leonhard. While he was driving westward on the north half of highway No. 10, his automobile collided with a Dodge sedan, which, while being driven eastward by Carl Wettengel, skidded somewhat onto the north half of that highway. That highway had a twenty-foot-wide concrete surface, edged on each side by dirt shoulders, which were four to six feet in width, and beyond which there were ditches about four feet in depth. The collision occurred at or near a right-angled intersection of highway No. 10 with county trunk J, which extended north and south, and had a graveled surface twenty-eight feet wide. Highway No. 10 was icy and slippery in spots, including the intersection with highway J, and there was some snow on the shoulders of the road.

Conflicting evidence admits of inferences to the following effect: Wettengel, approaching the intersection at a speed of forty to sixty miles per hour, was about 600 feet back of a Ford coupé, driven by Mrs. O'Keefe, at thirty to forty miles per hour, when the latter applied the brake and began slowing down her car to fifteen miles per hour in order to turn off to her right onto highway J. Just before making that turn she noticed Leonhard's car approaching on his right side of the road, 150 feet to the east of her. Wettengel did not notice that he was approaching the cross-road until he was 100 feet from the intersection. He did not notice that the stop light on the rear of Mrs. O'Keefe's car was put on several times. Neither did he see that Leonhard's car was approaching until, as Wettengel's car started skidding onto the north half of the road, he saw Leonhard's car 100 to 150 feet away from his car. Wettengel's car was two or three feet north of the black center line on highway No. 10 when the collision occurred. After the collision, Leonhard's car, facing east, was eight to ten feet west of highway J, and was partly on the shoulder, and partly in the ditch on the

north side of highway No. 10. Wettengel's car came to a stop east of highway J, with its front end on the south side and its rear end on the north side of the center line of highway No. 10. The testimony was conflicting as to whether it faced to the east or to the west.

Leonhard testified that he approached highway J at twenty-eight to thirty-two miles per hour, and that the collision occurred east of that highway, just after he had passed a white post, which was a foot and a half to the north of his car. He first noticed Wettengel's car when it was approximately seventy-five to one hundred feet away from him, swinging out from in back of Mrs. O'Keefe's car at about the west line of highway J. Thereupon he immediately took his foot off the gas accelerator, applied his foot-brake three or four times, reduced his speed to the rate of twenty-two to twenty-five miles per hour, and, when fifty feet east of that white post, turned to the right and was going off the concrete on the north side, four feet west of that post, when the crash came. The impact did not occur at the intersection. Notwithstanding the impact, his car continued on until it crossed highway J, and went into the north ditch. Wettengel's car, straddling the center line, came toward Leonhard's car at an angle.

On the other hand, Wettengel testified that when he observed Mrs. O'Keefe's car, which was about fifty feet ahead of him, slowing down suddenly and turning abruptly to the right, he applied his brake, about seventy-five feet west of highway J, when he was 100 to 150 feet from Leonhard's car; and that Wettengel's car started to slide eastward and somewhat to the north. He straightened it up at once but it began to slide again. He did not observe Leonhard change his course at any time after Wettengel started to skid, and he did not believe that any portion of Leonhard's car was off the concrete at the time of the collision. The left front

corner of Wettengel's car was struck, and its left front wheel was torn off. It traveled about forty feet after the impact, and came to a stop a little over thirty feet east of highway J. Leonhard testified that shortly after the collision Wettengel said, "It is all my fault, I lost control of my car;" and another witness testified also that Wettengel made a statement to that effect.

A passenger in Wettengel's car testified that when Mrs. O'Keefe's car started to turn into highway J, and he noticed its stop-light flash, it was fifty to seventy-five feet ahead of Wettengel's car; that as soon as the latter applied the brakes, his car started to skid; that the left wheels of Leonhard's car were about two or three feet from the center line of the concrete highway at the instant of the impact; that the left side of Wettengel's car, after skidding, was possibly two or three feet over that line to the north; and that its left front corner was hit.

The jury found that the collision was caused by negligence of Wettengel in driving at an excessive speed, in not keeping a proper lookout, in following the O'Keefe car too closely, and in turning onto the left side of the highway; but that Leonhard was not negligent in respect to speed or keeping a proper lookout. Upon the verdict, judgment was entered which provided for the recovery by plaintiff from Wettengel of the damages assessed by the jury, and the dismissal of Wettengel's cross-complaint against Leonhard for contribution.

The evidence fairly admitted of the jury's findings that negligence on the part of Wettengel in the respects stated was a cause of the collision; and that Leonhard was not negligent in respect to speed and lookout. The jury's findings in those respects have been approved by the learned circuit judge and cannot be disturbed on an appeal. However, there was no finding by the jury as to whether Leonhard was neg-

ligent in the management and control of his automobile, although the submission to the jury of a question to that effect was expressly duly requested on behalf of Wettengel. In considering whether Wettengel was entitled to have that issue submitted as requested, the credible evidence must be given the most favorable construction and inferences which it fairly admits of, under any reasonable view, in support of his contentions. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741. Under that rule, the evidence admits of inferences to the following crucial effect in relation to the issue of whether Leonhard was negligent in respect to management and control:

Wettengel's car began skidding onto the north half of highway No. 10 when it was west of the highway J intersection, and Leonhard's car was 150 feet to the east of Wettengel's car. When Leonhard first saw Wettengel's car skid onto the north half of highway No. 10, it was 100 feet from Leonhard's car. Leonhard turned toward the north edge of the highway, when he was fifty feet east of a white post, which was east of the intersection, and the crash did not occur until he was four feet west of that post. Consequently, he traveled at least fifty-four feet fully aware of the danger because of Wettengel's skidding car. He had time to take his foot off the accelerator, apply his foot-brake three or four times, and succeed in reducing his speed from twenty-eight to twenty-two miles per hour. On the other hand, Wettengel's car skidded but two or three feet to the north of the center line of highway No. 10. That left, for the unobstructed passage of Leonhard's car, seven feet of concrete plus four feet of shoulder to the north of the south three feet of the north half of the highway, onto which Wettengel's automobile had skidded. Leonhard, instead of turning to the north onto those remaining seven feet of concrete plus four feet of shoulder, so as to clear Wettengel's skidding car, did not, according to the testimony of Wet-

tengel and the passenger in his car, change his course after Wettengel's car had started to skid. At the instant of the impact, the left wheels of Leonhard's car were but two or three feet from the center line of highway No. 10, and no portion of his car was off the concrete. If the requested issue had been submitted to the jury, and it adopted the permissible inferences to that effect, the jury could have found that Leonhard failed to turn as far to the north as he safely could and ought to have done, in order to allow sufficient clearance between the two cars, and that in that respect he was negligent in the management and control of his car. If, as found by the jury, the speed at which Leonhard was proceeding was not negligently excessive, and he was not negligent as to lookout, then his opportunity to avoid a collision by properly steering his car was better than it would have been if he had also been proceeding negligently in respect to speed and lookout. Even though Leonhard had the right of way on the north half of the road, he might nevertheless be guilty of negligence in insisting upon it if he could, in the exercise of ordinary care, have avoided the collision by turning somewhat further to his right. "Even though one has the right of way, one is not justified in recklessly plunging ahead under all circumstances." *Zutter v. O'Connell,* 200 Wis. 601, 229 N. W. 74; *Glatz v. Kroeger Bros. Co.* 168 Wis. 635, 170 N. W. 934. It follows that there was, under the evidence, an issue of fact as to whether Leonhard was negligent in managing and controlling his car in the respect indicated, and that the failure to submit that issue to the jury, as requested on behalf of Wettengel, constituted error, because of which he is entitled to a new trial of all issues raised by his cross-complaint against Leonhard.

Although error is also assigned by Wettengel in several other respects, which he contends affect the judgment in so far as it provides for recovery by plaintiff from Wettengel, due consideration of the record discloses that no other error

was committed. No purpose will be served by discussing the assignments at length. The evidence well warrants the jury's assessment of damages, regardless of the present, greatly increased purchasing power of the dollar, as to which Wettengel sought, by a requested instruction, to have the jury's attention specifically directed. The present greater purchasing power of the dollar, and the correspondingly low values of property, are matters of common knowledge to such an extent, and, because of the general economic distress which has followed, have become impressed so deeply in the minds of all adults, that there is no need for expressly instructing a jury to take those matters into consideration in assessing damages. "It would seem that appellant could not have been prejudiced by a failure to instruct on such a matter of common knowledge." *Rideout v. Winnebago Traction Co.* 123 Wis. 297, 312, 101 N. W. 672.

The fact that news items, which Wettengel considers prejudicial to him, and which he charges affected the jury prejudicially to his defense, were published in the daily paper during the three days of the trial in the city in which the case was tried, affords no basis for reversal. The matter does not appear to have been brought to the attention of the court until affidavits were filed in connection with Wettengel's motions after verdict. On the one hand, the articles complained of appear to be but brief and fair newspaper reports of the pendency and nature of the action, the parties thereto, the damages claimed as set forth in the complaint, and the daily progress of the trial. There is nothing about them that is unusual or indicative of any design to prejudice any party, or interfere with the proper administration of justice. If there had been, and they had been brought to the attention of the learned circuit judge during the course of the trial, we are confident that on his part there would have been no hesitation to 'act promptly and effectively so as to fully protect the right of each party to a fair and impartial

trial. Even if the articles had been brought to the court's attention during the trial, it would not follow that an aggrieved party was entitled to have the court declare a new trial because of the publication thereof. Even then it would have been within the province and duty of the court to determine whether there had been any improper prejudicial influence by reason of the articles. *Fenelon v. State,* 195 Wis. 416, 431, 217 N. W. 711, 218 N. W. 830. However, when the matter was finally brought to the court's attention, it received full consideration, and the records disclose no reason for disturbing the conclusion that it is not probable that the jury was at all influenced by the publications.

It follows that the judgment should be affirmed in so far as it provides for the recovery of damages from Wettengel by the plaintiff. Her rights are established by the verdict which stands approved. As was held in *Scharine v. Huebsch,* 203 Wis. 261, 268, 234 N. W. 358, she is now entitled to judgment herein and to have this litigation ended as far as she is concerned. However, as between Leonhard and Wettengel, the latter, by reason of his cross-complaint, is entitled to have this litigation continued for a retrial and determination of the issues in the action as between themselves under their pleadings. Upon the determination of those issues and their rights herein, a further judgment can subsequently be entered herein accordingly.

*By the Court.*—The judgment is affirmed in so far as it awards the plaintiff recovery against defendant Carl Wettengel; and reversed in so far as it dismisses the latter's cross-complaint against the defendant Norman Leonhard, with directions to enter an order for a new trial of the issues under the cross-complaint of Carl Wettengel.