THOMA, Respondent, vs. CLASS MINERAL FUME HEALTH BATH COMPANY and another, Appellants.*

*November 11—December 7, 1943.*

---

* Motion for rehearing denied, with $25 costs, on February 15, 1944.

For the appellants there were briefs by *Brennan & Brennan* of Milwaukee, and oral argument by *Martin J. Brennan.*

For the respondent there was a brief by *Arthur G. Wolff,* attorney, and *P. F. Leuch* of counsel, both of Milwaukee, and oral argument by *Mr. Leuch.*

FRITZ, J.    Plaintiff seeks to recover a balance, which she claims is owing to her by the defendants, Class Mineral Fume Health Bath Company and Margaret Greif, for services performed by her between November 11, 1922, and June 10,

1939, for the corporation and Margaret Greif and her husband. When plaintiff entered into the contracts and defendants' employment on November 11, 1922, Margaret Greif and her husband owned the corporation, which operated a health-bath establishment in premises in which the Greif family also had their home. Plaintiff was employed to do the family's housework and also work in the corporation's health-bath establishment, and she continued to perform such services until June 10, 1939, with the exception of sixteen weeks during which she was away on a trip to Europe. Since the death in 1922 of the husband of Mrs. Greif, she and her son managed the corporation's affairs. Plaintiff introduced proof that when she first entered defendants' employment they agreed to pay her as wages $8 per week, in addition to her room and board; and on June 10, 1932, they agreed that the amount to be paid her would be $10 per week. On the other hand, defendants relied on proof that the amount which they agreed, in November, 1922, to pay was $25 per month; and that the increased amount agreed upon in June, 1932, was $35 per month. As there were conflicts in the evidence in relation to which of those amounts the defendants agreed to pay, the court rightly submitted the issues in that respect to the jury; and as evidence, which the jury could consider credible, fairly admitted of the jury's findings that under the agreement made in November, 1922, defendants agreed to pay $8 per week, and that under the agreement made in June, 1932, they were to pay $10 per week to plaintiff, the court was well warranted in approving those findings in passing upon the motions after verdict. Under the agreements thus found by the jury, the total of the amount which defendants were to pay to plaintiff was $7,480.

Likewise there was a conflict in the evidence in relation to what plaintiff had received from defendants as payments on her wages in either cash, clothing, medical services, or to pay her passage from and to Europe and return, and also to pay

on investments and other bills, which defendants claim they paid for the plaintiff at her request. In relation thereto plaintiff admitted that she did receive the total of $2,729.03 in payments made to her or expended for her benefit by defendants. That left in issue, under the conflicting evidence, the questions whether, in addition to the admitted total amount of $2,729.03, defendants invested for plaintiff with her consent,—as they claim,—(1) $1,790 in shares of building and loan association stock, which they claim to have traded, with plaintiff's consent, for mining stock that subsequently proved to be worthless; and (2) also $360 in a lot for which Mrs. Greif claims she subsequently paid plaintiff $100 (the payment of the $100 is included in the total payments of $2,729.03 admitted by plaintiff). The jury found that $3,089.03 was the total of the amounts paid by defendants to or for the benefit of plaintiff to apply on wages due her; and the court approved that finding. Defendants contend that the jury in so finding and the court in approving thereof ignored evidence which defendants claim was undisputed, in relation to the investment of the items of $1,790 and of $360.

These contentions cannot be sustained. There is a decided conflict under the evidence, and as the jury's finding that the total amount of defendants' payments was $3,089.03, which was $360 more than the sum of $2,729.03 admitted by plaintiff, it seems that the jury sustained defendants' claim in relation to the investment of $360 in the lot. However, under the conflicting evidence in respect to that item, and likewise in relation to whether defendants ever invested $1,790 in the building and loan association stock for plaintiff in her name and with her consent, and if so, whether she ever authorized the exchange thereof for mining stock, and the latter was ever acquired for her or on her behalf, the issues in respect to all of those matters were clearly for the jury; and as its findings and the court's approval thereof were warranted under the evidence, they cannot be disturbed on this appeal. *Rebholz v.*

*Wettengel,* 211 Wis. 285, 289, 248 N. W. 109; *Borg v. Downing,* 221 Wis. 463, 465, 266 N. W. 182.

In addition to the issues stated above, there was also submitted to the jury for a special verdict, question No. 7 which reads,—

"Did the plaintiff on or about the 10th of June, 1939, knowingly sign the release or receipt which has been marked Exhibit 5 in this case?"

This question the jury answered "No."

Exhibit 5, which is mentioned in that question reads,—

"Wage Waiver.

"This is to certify that up to and including June tenth (10th) 1939, all wages or moneys due me, from the Class Mineral Fume Health Bath Co. or Mrs. Margaret E. Greif at 855 North 11th street, Milwaukee, Wisconsin, have been paid in full, and nothing more is due me.

"Signed ·

"Mrs. Elizabeth Gechter Thoma."

Defendants contend that as this instrument purports to have been signed by plaintiff, it constitutes *prima facie* proof, in view of the provisions in sec. 328.25, Stats., that it was so signed until denied by her in an affidavit or a pleading verified by her; that the burden of proof is upon the plaintiff to explain her handwriting on Exhibit 5, and that the attempted denial in her testimony of the signature thereon cannot overcome defendants' *prima facie* case, and the effect of some of her other testimony; that consequently there was no issue created for the jury on plaintiff's proof; that the jury's finding that she did not "knowingly" sign Exhibit 5 can be supported only by speculation and guess; and that the court erred in refusing to answer question No. 7 "Yes" as a matter of law.

In relation to Exhibit 5 defendants alleged in their answer, —after admitting plaintiff had worked for them,—that on June 10, 1939, there was a complete compromise and settle-

ment between them and plaintiff; and that she was paid $1,000, as the balance due her, and then signed the release and waiver marked Exhibit 5. As there was no counterclaim in defendants' answer, there was no further pleading required or filed as a reply by plaintiff. On the trial defendants introduced testimony to prove that on June 10, 1939, when plaintiff contemplated taking a trip to Europe, she and Margaret Greif made a settlement that plaintiff had $750 coming and they agreed upon $1,000; that plaintiff did not want her husband to know how much money she had coming, and wanted to arrange with Margaret Greif so that if anything happened to plaintiff Mrs. Greif would send the money to plaintiff's people in Europe; and that plaintiff then signed Exhibit 5. On the other hand, plaintiff denied in her testimony on the trial that she had any such conversation with Margaret Greif on June 10, 1939, or ever discussed with her an amount in the neighborhood of $750. Plaintiff testified she did not ask Mrs. Greif for a settlement until in the spring of 1940. Moreover, the statement in Exhibit 5 that all wages or moneys due plaintiff from the defendants up to June 10, 1939, "have been paid in full and nothing more is due to me" is evidently false. Although Margaret Greif testified that on June 10, 1939, she gave plaintiff a check for $1,000, which plaintiff handed back to her and which she destroyed and in lieu thereof put a note for $1,000 in her safety deposit box, it was established by other evidence that the amount of $1,000 was in fact not paid until in 1940 when she received from Margaret Greif checks for $500 on January 17, 1940, $100 on March 26, 1940, and $400 on April 4, 1940. In relation to whether there was a sufficient denial by plaintiff under oath that Exhibit 5 was signed by her there is the following: When defendants' counsel first asked plaintiff on an adverse examination before trial, "Is that signature of yours, on this [Exhibit 5] your handwriting," she replied, "Well, it shows my handwriting, but I don't remember, I don't ever remember seeing this paper,

but that looks, that is my handwriting." Subsequently when cross-examined on the trial she said, "Yes that is my handwriting," but immediately in answer to the question, "Did you write that receipt to Exhibit 5," she testified, "It looks like my handwriting but I never wrote that—I never signed—I saw Exhibit 5 last summer at the court commissioner.' I never saw that before. Never read anything like it."

"*Q.* And you did not sign it. *A.* No, sir.
"*Q.* Do you know what it contains? *A.* Yes, sir, I said it looks like my handwriting but it isn't. I didn't write it. I deny it is. It looks like my handwriting but I don't know how it ever got on that slip of paper.
"*Q.* How come that before the court commissioner you admitted that you signed this exhibit and it contained your handwriting and now you say you didn't? *A.* I didn't admit it there. I said it looks like it, but I didn't put it there."

By those answers of plaintiff she can be considered by the jury and the court to have denied by her oath the execution by her of the alleged wage waiver which appears on Exhibit 5; and consequently there was duly raised by such denial a jury issue as to whether she did sign that instrument, and the evidence admitted of the jury's finding on that issue.

In addition, in so far as there was also involved under the wording of question No. 7 the element as to whether plaintiff "knowingly" signed Exhibit 5, the jury's finding that she did not *knowingly* sign the alleged waiver or release, which now appears thereon, is fairly sustained by her testimony: "I saw Exhibit 5 last summer at the court commissioner's. I never saw that before. Never read anything like it. . . . I don't ever remember seeing this paper, but that looks, that is my handwriting." Although Exhibit 5, as an instrument purporting to have been signed by plaintiff, constituted proof, in view of sec. 328.25, Stats., that it was so signed until denied by her oath, in view of such denial by her testimony as quoted above, there was an issue for the jury as to whether the in-

strument was in fact signed by her, and on that issue the burden of proof was upon the defendants to establish that the jury's answer to question No. 7 should be "Yes." As defendants relied upon Exhibit 5 to prove that they had paid plaintiff's claim in full, the burden of proof was upon them to convince the jury by the preponderance of the credible evidence to a reasonable certainty as to every element necessary to establish the ultimate fact of payment.

It is further contended by defendants that the court in instructing the jury erred in not stating on what party the burden of proof rested as to each contested issue. The court, in preparing the questions submitted for the special verdict, worded all of them (excepting question No. 6 which was in relation to the total amount received by plaintiff) in such manner that the burden of proof was, as a matter of law, upon the party contending for an affirmative answer. Then as to each of those questions, the court instructed the jury as follows:

"If you are convinced by the preponderance of the evidence to a reasonable certainty that you should answer this question 'Yes,' then make that your answer. If you are not so convinced, your answer to this question should be 'No.' "

That instruction was correct and sufficient. As this court said in *Kausch v. Chicago & M. E. R. Co.* 176 Wis. 21, 26, 186 N. W. 257,—

"Error is assigned because the court did not charge the jury with reference to the burden of proof. The questions were so framed that the burden of proof was on the affirmative side in each instance. With reference to each question the jury were told that before they could return an affirmative answer they must be satisfied to a reasonable certainty by a consideration of all the evidence that the fact inquired about existed. If not so satisfied, they were directed to answer the question 'No.' This most effectually placed the burden of proof upon the party required to prove the affirmative of each

question propounded, and made a charge with reference to the burden of proof unnecessary. The trial judge, in his opinion upon the motions after verdict, stated that this was his uniform practice, and expressed the opinion that it was a better and safer practice than to attempt to define the terms 'burden of proof' and 'preponderance of evidence.' It appears to be a simple and effective way of impressing upon the jury the rule which should govern them in arriving at their determination, and rendered an instruction with reference to the burden of proof unnecessary."

Question No. 6 was worded so as to be answered by stating the total amount received by plaintiff from defendants, instead of calling for a "Yes" or "No" answer. Consequently in relation to the instruction as to the burden of proof as to that question the court rightly instructed,—

"As to this question I instruct you that you should insert such an amount as you are convinced by the preponderance of the evidence to a reasonable certainty that the defendants have paid to or expended in behalf of the plaintiff with her consent and approval."

Defendants also contend that in submitting to the jury the issues as to whether agreements were entered into in November, 1922, and June, 1932, by and between plaintiff and defendants the court erred in having the questions read, "Did the plaintiff and the defendants enter into an agreement," etc., instead of having,—as defendants claim there should have been,—a separate question on such issues as to each defendant so that as to each the jury could determine separately whether such defendant entered into an agreement with plaintiff and the amount of each defendant's liability thereunder.

There is no reversible error in those respects. No such separate questions were requested by the defendants. On the contrary, when the court submitted to counsel the questions prepared for the verdict, defendants' counsel stated he had no objection to the form of the questions, but did object to

the submission of all except question No. 7, "on the ground that the submission of those questions is contrary to the law and contrary to fact." Moreover, as the learned circuit judge said in denying the motions after verdict,— ·

"Throughout the trial there was no attempt made by either party to *differentiate* between the services rendered in the home and in the bath establishment. Evidently they are really one institution, inasmuch as the bath company, while a corporation in form, is owned by the Greif family. . . . The testimony shows that whatever arrangement was made as to compensation was between the plaintiff and Mrs. Margaret Greif. I feel, therefore, that it is immaterial what part of the services was rendered for the family and what part for the bath company. The wage was for the plaintiff's services and is a charge against Mrs. Greif who employed her in behalf of herself and in behalf of the company of which she was an officer. The corporation availed itself of her services during the years in question and should not now be allowed to question the authority of Mrs. Margaret Greif, an officer of the corporation, to make the contract in question. The part that is ultimately to be paid by Mrs. Greif and the amount by the bath company is a matter for adjustment between the two defendants. When one is employed to work for two persons jointly, and there is no request to keep a separate account for each, the charge must be a valid one as against both employers. Here, in addition, the home and the bath company were practically run as one concern."

Finally defendants contend that the court erred in allowing interest from June 10, 1939, on the balance which defendants owed plaintiff. On the question of interest it appears that on the motions after verdict plaintiff contended she was entitled to interest on each year's earnings. In overruling that contention the court said,—

"This was clearly an unliquidated account until June 10, 1939. The plaintiff apparently was perfectly willing to leave her money with the defendants until called for. She made no demand for it until on or about the said 10th of June, 1939."

However, in that connection the court concluded that plaintiff "is entitled to interest at legal rate from June 10, 1939, to date of judgment." Accordingly interest from June 10, 1939, was apparently included in the judgment without any objection thereto being asserted by defendants on the ground that June 10, 1939, was not the date on which plaintiff demanded payment. Now, however, on this appeal defendants object on the ground that plaintiff made no demand until January, 1940. As the record discloses that plaintiff testified positively that she had no conversation or discussion with Margaret Greif on June 10, 1939, and that plaintiff did not ask for a settlement until in the spring of 1940, the defendants' contention, that plaintiff is not entitled to interest from June 10, 1939, must be sustained. Consequently the judgment must be modified by reducing the amount of the interest included therein to such interest as accrued on the balance owing to plaintiff since she received the last payment of $400 on April 4, 1940.

Although the judgment must be so modified, defendants cannot be allowed, in view of their failure to assert in the trial court their present contention as to interest, the costs usually allowed to the prevailing party on an appeal.

*By the Court.*—Judgment modified by the reduction, as directed in the opinion, of the amount of interest included in the judgment; and affirmed as modified. Costs will be taxed in favor of the respondent.