Watkins, Respondent, vs. Watkins and others, Appellants.

*November 10, 1932—March 7, 1933.*

608

For the appellants Watkins and Employers Mutual Indemnity Corporation there were briefs by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *C. F. Smith.*

For the appellant Krahn there was a brief by *A. H. Eberlein* of Wausau.

For the respondent there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner.*

The following opinion was filed December 6, 1932:

ROSENBERRY, C. J. One of the errors assigned is that the trial court denied the defendant Employers Mutual Indemnity Corporation's motions for a directed verdict at the close of all the evidence. The fourth paragraph of the answer of the Employers Mutual Indemnity Corporation is as follows:

"4. Alleges that the said insurance policy contained the following express condition and stipulation, among others, to wit: 'H. No action shall lie against the company to recover upon any claim or for any loss defined herein unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by judgment against the insured after trial of the issue, or by agreement between the insured and claimant with the written consent of the company, nor in any event unless brought within one year thereafter.' "

The facts presented by this paragraph are those ordinarily set up by way of a plea in abatement. While the court was aware at the beginning of the trial that the allegations already quoted were in the answer, no question was raised with respect to the matters therein stated until after the close of all the evidence. Upon the trial the policy was offered

and received in evidence and the issues as between Watkins and the Employers Mutual Indemnity Corporation, hereinafter referred to as the insurer, were brought to the attention of the court and evidence was offered and received in respect thereto. No doubt the failure of the insurer to demand a separate trial with respect to the issues raised by the plea in abatement constituted a waiver of its right in that respect. However, when upon motions at the close of the evidence it was apparent that under its policy an action could not be maintained against the insurer, the court should have granted the insurer's motion for a verdict as to it. The policy was issued on February 6, 1931. Ch. 375 of the Laws of 1931 was published on June 30, 1931. The court held the chapter applicable because the policy contained a provision that it might be canceled either by the insured or the insurer by giving five days' written notice of cancellation; that for that reason the policy was not an absolute contract for one year. How a right reserved to terminate a contract affects the obligation of the contract unless and until the right is exercised, we are unable to understand. The contract was at all times from the date of its issue down to the time of the accident either in force or not in force. If it was in force, it was in force as written and was not amended in any way by reason of the failure of the insurer to terminate its contract in accordance with the right reserved by its terms.

The policy also contained a provision to the following effect: "Any specific statutory provision in force in any state or province shall supersede any condition of this policy inconsistent therewith."

It is argued that under this clause, ch. 375 of the Laws of 1931 was incorporated in the policy. It is quite apparent that the language of the contract refers to statutory provisions then in force and is inserted by the insurer for the purpose of avoiding conflict between its policy and the laws of any state in which the policy may be issued. The company does not consent that its contract may be thereafter modified by

statute subsequently enacted. See 1 Cyc. Ins. (Couch) §§ 157, 158, p. 308, and cases cited.

II. The insurer set up in its answer facts which if true tend to show that the insured, Howard L. Watkins, failed to perform the contract with respect to co-operation. The co-operation clause is as follows:

"The insured, as often as required, shall exhibit to any person designated by the company all that remains of any property herein described, and shall submit to examinations under oath by any persons named by the company, and subscribe the same; and, as often as required, shall produce for examination all books of accounts, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by the company or its representative, and shall permit extracts and copies thereof to be made. . . .

"The insured when requested by the company shall aid in effecting settlements, securing evidence, the attendance of witnesses, and in prosecuting appeals. The insured shall not voluntarily assume any liability, settle any claim, or incur any expense other than for immediate surgical relief, except at his own cost, or interfere in any negotiation or legal procedure without the consent of the company previously given in writing."

The answer alleges that Watkins did, without the consent of the company, assume liability to the plaintiff, his wife, for the accident, assisted the plaintiff in employing an attorney and in instigating the action, and in other respects failed to perform the agreements by him to be performed under the terms of the contract.

In view of the conclusion which we have reached in this case, we shall not determine whether or not there was such failure on the part of Watkins as would defeat a right of recovery by the plaintiff upon the contract. Suffice it to say that the evidence raises a very serious and doubtful question. In ruling upon the matter the trial court said:

"It would seem that the doctrine of *Tweeddale v. Tweeddale*, 116 Wis. 517, 93 N. W. 440, and succeeding cases, should find some application here. That rule is that when,

by contract, rights are created in favor of a third person, they may not be defeated by anything less than consent or misconduct of the third person."

We think the quoted statement indicates a misconception with respect to the holding in *Tweeddale v. Tweeddale*. It was there held that contractual relations being established between two persons for the benefit of a third, neither one nor both of the immediate parties to the transaction can rescind the same or in any way interrupt or prejudice the rights of the third person without his consent. This holding like all others must be considered in the light of the facts to which it was applied. In that case there was an unconditional promise by one of the parties to the original contract to pay to the plaintiff, the third person, a certain sum of money. Thereafter the parties to the original contract attempted to satisfy it without the consent of the person for whose benefit payment was to be made and this was held to be beyond the power of the parties to the original contract. It has been repeatedly held by this court, however, that when a right has been created by contract, the third party claiming the benefit of the contract takes the right subject to all the terms and conditions of the contract creating the right.

The most familiar illustration of this is the right reserved by the insured in a life policy to change the beneficiary. See *National Life Ins. Co. v. Brautigam,* 163 Wis. 270, 154 N. W. 839, 157 N. W. 782. While in that case *Tweeddale v. Tweeddale, supra,* is not referred to, the whole theory of the case is that the statute there under consideration assured the beneficiary the continued benefit of the policy so long as it remained in force. It is there held that, although within the terms of the statute, nevertheless the right of the beneficiary was subject to the terms and conditions contained in the policy. Certainly the terms of a private contract cannot be more controlling than the terms of a contract regulated by statute, and if the contract right regulated by statute is subject to reservations contained in the contract, certainly an

ordinary contract may prescribe the terms and conditions upon which a right created by it may be claimed and enforced. So a contract for the benefit of a third person is subject to reformation for mutual mistake in its inception. *Broadbent v. Hutter,* 163 Wis. 380, 157 N. W. 1095. See, also, 1 Williston, Contracts, p. 737, § 394, and cases cited.

Policies containing covenants the same as or similar to those contained in this policy have been so often sustained that the question should be considered at rest. *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572; *Buckner v. General Casualty Co.* 207 Wis. 303, 241 N. W. 342. See, also, *Fulleylove v. Constitution Indemnity Ins. Co.* 205 Wis. 463, 237 N. W. 95, 238 N. W. 289; *Home Ins. Co. v. Dick,* 281 U. S. 397, 50 Sup. Ct. 338; *Pawlowski v. Eskofski,* 209 Wis. 189, 244 N. W. 611.

If insurers may not contract for fair treatment and helpful co-operation by the insured, they are practically at the mercy of the participants in an automobile collision. One does not need to scrutinize very closely the testimony given by the insured, Howard L. Watkins, upon the trial of this case, to discover that he was at least sympathetic with the efforts of his wife to recover against the assured.

III. We come now to a consideration of the main contention of the defendant insurer, which is that conceding for purposes of argument that the defendant Watkins was guilty of negligence in failing to maintain a proper lookout and have his car under control and in failing to have the car equipped with efficient brakes, there is no evidence that his failure to exercise ordinary care in those respects was a natural cause of the accident. There is substantially no conflict in the evidence with respect to the happening of the accident. There are some undisputed and incontrovertible facts. According to measurements taken after the accident as shown by the testimony of the plaintiff, the accident happened less than one hundred feet north of the intersection, probably about ninety feet. The Snelling car was traveling

at a speed of from eight to ten miles per hour, eleven to fourteen feet per second, so that the whole occurrence consumed a time not exceeding seven or eight seconds reckoning from the time the Snelling car turned into highway 51. During this time the Watkins car was coming from the north at a speed of forty to forty-five miles per hour, from fifty-nine to sixty-six feet per second. The Krahn truck was coming from the south at a speed of thirty-five to forty miles per hour or fifty-one to fifty-nine feet per second. Plaintiff's evidence is to the effect that up to the time the Krahn truck reached a point near the intersection, it had remained on its right side of the road. It is undisputed in the evidence that Krahn turned left in an attempt to pass the Snelling car, saw the Watkins car and returned to his right side of the road after Snelling turned into highway 51. Krahn testified, and all of the physical facts conclusively show, that Krahn turned sharply to the west or his left immediately before the accident. In order to travel from his correct position on the east side of the road to the position where he was struck on the west side of the road he must have consumed less than a second. The statement made by the plaintiff and Krahn that the Krahn truck was 200 feet away from the Watkins car when Krahn turned across the highway is contrary to every other fact in the case. Plaintiff said :

"At the time I hollered to Mr. Watkins the truck was coming right down on us. I couldn't have done anything further. I just yelled at my husband and grabbed him. There wasn't any time for me to do anything further. The accident happened almost instantaneous after I yelled. There wasn't any time for me to do anything further. There wasn't any time for Mr. Watkins to do anything further." . . .

The defendant Watkins was unable to say whether he attempted to apply his brakes or not.

We have not attempted to set out all of the evidence, but from a careful consideration of the record it conclusively

appears that after Krahn turned across the west side of the highway a collision was inevitable and was, as plaintiff said, almost instantaneous. At the instant Krahn started to turn across the west part of the concrete, Watkins, under all the testimony, could not have been more than ten or twenty feet farther from the place of collision than was Krahn. There was only five miles per hour difference in their speed. Without accepting calculations made by engineers, it is approximately true that a car traveling at the rate of forty miles per hour will travel twenty-nine feet while the brake is being applied and will then travel eighty feet before it can be brought to a stop with efficient brakes. To say that this accident was caused by the failure of the defendant Watkins to have his car under control and maintain a proper lookout when up to the instant before the accident he had a clear right of way, traveling at a reasonable rate of speed on a dry concrete pavement, is pure speculation at best and wholly at variance with the established facts. On any computation based on the undisputed facts, Watkins' car must have been not more than forty or fifty feet away from the place of collision when Krahn turned across the pathway of the Watkins car. Nothing that Watkins could have done with any kind of brakes could have prevented the impact. Had he maintained the most vigilant lookout he could have done nothing after Krahn turned his truck to the west. Some argument is made based upon the proposition that the defendant Watkins should have been warned by the effort made by Krahn to pass the Snelling car, but the undisputed evidence is that there was nothing to indicate any obstruction in his pathway until the Krahn car turned to the west the second time. The Krahn car in traveling from its place on the east side of the road to the place where it was hit on the west side of the road at a sharp angle, could not have traveled more than thirty or forty feet at the very most, so that when the turn was made the Watkins car, traveling at forty to forty-five miles an hour, was about the same dis-

tance away. According to the tables, Watkins did not have time to do more than apply the brake had he maintained a perfect lookout. There was no time for the brake if it had been perfect to function, much less to bring the car to a stop or substantially slacken its speed. There was no reason for him to slacken his speed until the instant before the impact. Krahn had returned to the place where he belonged and the way was clear. See *Royer v. Saecker,* 204 Wis. 265, 234 N. W. 742.

It is considered that the evidence in this case wholly fails to sustain the finding that the negligence on the part of the defendant Watkins was a proximate cause of plaintiff's injuries or of the injury to Krahn. Whether Krahn is guilty of negligence is undoubtedly a jury question. An emergency was created by Snelling unexpectedly coming upon highway 51. Whether or not Krahn thereafter failed to exercise ordinary care was, under the circumstances, a question for the jury. Why he did not go into the ditch on the east side of the road instead of trying to get into the ditch on the west side of the road does not appear. In any event neither the plaintiff Watkins nor the defendant Krahn can recover against the defendant Watkins.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to dismiss the plaintiff's complaint as well as the cross-complaint of the defendant Krahn.

A motion for a rehearing was denied, with $25 costs, on March 7, 1933.