Schwab, Respondent, vs. Martin and others, Appellants.

*April 12—May 17, 1938.*

46

For the appellants George M. McElroy and Employers Mutual Indemnity Corporation there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey.*

*M. J. Paul* of Berlin, for the appellant Bernard Martin.

For the respondent there was a brief by *Bradford, Bradford & Derber* of Appleton, and oral argument by *Albert S. Bradford.*

WICKHEM, J.  Plaintiff is a salesman living in the city of Appleton.  On the day of the accident he was a guest in a Ford panel-body type of automobile owned by one Hopfensperger and driven by defendant McElroy.  For convenience this car will hereafter be referred to as the "McElroy car." On the evening of December 14, 1935, Arthur Hopfensperger, Mike Judkins, George M. McElroy, and Max A. Schwab, the plaintiff, arranged a rabbit-hunting trip for the next day, which was Sunday.  It snowed approximately three inches during the evening of the 14th.  The party left

on the trip about 6 o'clock in the morning and had their day of hunting. About 4 o'clock the party gathered at the truck or car and started for Appleton. On the return trip McElroy drove the automobile with the consent of its owner. Plaintiff Schwab sat on the front seat with him and the other two members of the party sat in the rear on improvised seats. McElroy drove the car to United States Highway No. 10, and proceeding thereon in a southeasterly direction drove toward Appleton. During the day the snow had become frozen and the road was slippery. The headlights of the car were lighted, and the car proceeded at a speed which gave rise to no crises or incidents until shortly before the accident. The collision occurred on Highway No. 10, a short distance east of the junction of this highway with State Highway No. 49. At the place of the accident Highway No. 10 runs approximately east and west. Highway No. 49 runs approximately north and south. The highways converge at a junction known as Sunset Curve, and continue northerly to Weyauwega and Waupaca. At the point of the accident Highway No. 10 is built three and one half to four feet above the level of a marsh, has no shoulders, is nineteen feet wide, and has a curb approximately nine inches high on each side. The Martin car was proceeding in a westerly direction along Highway No. 10, and collided with the McElroy car. Defendant Watson was a resident of Arkansas, who had come to Berlin in 1935. She and defendant Martin attended a dance at West Bloomfield Saturday night, December 14th. The next morning Martin made a call upon Mrs. Watson, and shortly thereafter had breakfast with her at the tavern. Martin and Mrs. Watson drove to Eureka, stopped at a tavern, and had some drinks. Martin was driving a car loaned to him by his brother. While they were there, Mrs. Watson inquired for a girl named Elva Carey. They drove to the home of Miss Carey, and she

joined the party. Martin then drove to Omro, where they made a brief stop, and then to Fremont, where they had several drinks. Upon leaving the tavern at Fremont at about dark Mrs. Watson took the wheel. Martin sat in the middle of the front seat and the Carey girl beside him. There is some uncertainty as to their destination, but in any event they started northwest on Highway No. 10. There is a curve on this highway as the road leaves Fremont, but it straightens out about seven tenths of a mile east of Sunset Curve, and from that point on is practically straight. Shortly after they had turned into this straightaway the occupants of the Martin car saw the headlights of the McElroy automobile. The Martin car skidded shortly after they had rounded the curve. This was observed by the occupants of the McElroy car. Here there is some difference in the testimony, the effect of plaintiff's testimony being that the Martin car continued to drive more or less on the left-hand side of the road, and to weave around during all the time when the cars were approaching each other. McElroy's testimony is that the Martin car ceased to weave and skid shortly after he had noticed it, and proceeded on its own side of the road until within one hundred feet of his car, when it suddenly started skidding and came over on McElroy's side of the road. McElroy claims that when he first saw the Martin car start to skid he took his foot off the accelerator, and that when it apparently regained its proper place on the road he proceeded as usual until the cars were one hundred feet apart, at which time the Martin car came over on to his side of the road. However the facts may be with reference to what happened up to the last one hundred feet, there is no dispute that McElroy turned his automobile to the left side of the road for the purpose of avoiding the accident, and that he was struck on the right side of his car before he had much more than crossed the center line with his left front

wheels. Plaintiff claims that McElroy was proceeding at the rate of about forty miles an hour, and that he never slowed down or took any account of the operations of the Martin car until the last one hundred feet when he turned to the left, and that about the time he turned to the left the Martin car turned back to its right-hand side of the road, and the accident occurred.

Defendant McElroy contends that the verdict is not supported by the evidence. The first important consideration is that McElroy was exonerated from the charge of negligent lookout and negligent speed. From this it must be concluded that the jury accepted McElroy's story as to his rate of speed and his observation of the other car. The next consideration is that plaintiff assumed the risk of McElroy's manner of driving, at least up to the last one hundred feet before the collision, since he made no protest, nor did anything to direct McElroy's attention to whatever dangers were then apparent as a result of McElroy's manner of driving. If there was anything in the situation up to that point that contributed proximately to the accident, the assumption of risk as to it would extend to the subsequent emergency caused by it, and plaintiff would be precluded from recovery by the doctrine of *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278.

If, on the other hand, there was no act on McElroy's part up to the last hundred feet before the collision that proximately contributed to it, then our inquiry must be directed to what happened after that point, for on this hypothesis there would be no assumption of risk by plaintiff of negligent acts occurring so shortly before the collision as to make protest ineffective or impractical. From a careful consideration of the evidence we conclude that it does not support the jury's findings of negligent control, negligent driving on the left side of the highway on meeting the Martin car, or negligent

failure to yield one half of the highway to the latter car. McElroy was faced on a slippery road with an oncoming car one hundred feet or less away invading his side of the road. There were no shoulders in the vicinity of the accident and the nine-inch curb as well as the three and one-half to four-feet drop to the surface of the marsh confined his movements to the nineteen-foot highway. We are unable to see what move McElroy could have made that would have been more likely to avoid the accident than the course he did take. In such an emergency he was compelled to make an instantaneous guess whether the Martin car would so proceed as to make stopping, holding his course, or turning to the left his best procedure. It is nearly if not quite impossible even now to do more than guess that one of these procedures would have avoided the collision in spite of the advantage of knowing just what the driver of the Martin car finally did. In view of this, we find it impossible to support the finding of negligent management and control. The questions dealing with McElroy's driving on the left side of the highway on meeting the Martin car, his failure to yield one half of the roadway to the latter car, are inseparable from the issue of management and control under the facts of this case. There is no question but what McElroy's course of action was adopted in a desperate effort to avoid a collision. If it constituted proper management and control under all the circumstances, it was not negligent by reason of a literal failure to drive upon his own side of the road or to yield one half of the road to the other car. Further than this, it is plain that McElroy was not negligent as to lookout, and that he was driving with due care as to speed. His car was fully within his control so far as the factor of speed was concerned, and he saw what he should have seen in order properly to exercise his judgment as to the management of the car. Even if it might be held that what he did in the emergency consti-

tuted negligence, it could only be considered to constitute a failure to meet ordinary standards of care with respect to skill and judgment. The guest clearly assumes the risk of negligent failures on the part of his host in the field of skill and judgment and may not predicate his recovery upon them. *Young v. Nunn, Bush & Weldon Shoe Co., supra; Harter v. Dickman,* 209 Wis. 283, 245 N. W. 157; *Grover v. Sherman,* 214 Wis. 152, 252 N. W. 680. It follows that the judgment as to McElroy must be reversed.

Defendant Martin appeals from the judgment against him as well as that dismissing his cross complaint, but upon this appeal merely assigns as error that there was no proof that defendant Watson was his agent. It is, of course, evident that the cross complaint of Martin against McElroy must fail for the same reasons that compel a reversal of plaintiff's judgment. The appeal of Martin from the judgment of plaintiff against him must also fail for the reason that the agency of defendant Watson for Martin was not in issue under the pleadings. The fact of this agency was fully alleged in the complaint, and an examination of Martin's answer shows that no issue was taken with this allegation. This being true, the agency must be taken to be admitted and plaintiff was not obligated to make any proof or showing in this respect.

*By the Court.*—Upon the appeal of defendant McElroy the judgment is reversed, and cause remanded with directions to dismiss plaintiff's complaint. Upon the appeal of Martin, judgment affirmed.