OELKE and wife, Appellants, vs. SCHNEIDER and another, Respondents.

*January 16—February 25, 1947.*

*John E. O'Brien* of Fond du Lac, for the appellants.

For the respondents there was a brief by *Reilly & Cosgrove* of Fond du Lac, and oral argument by *Frank W. Cosgrove*.

RECTOR, J. The sole question for decision is whether evidence was adduced at the trial which would have supported a jury's verdict that Alfred Oelke's death was attributable to negligence of the respondent Schneider in the operation of his automobile. *Boyce v. Independent Cleaners, Inc.* (1932) 206 Wis. 521, 240 N. W. 132.

Alfred Oelke, Steffes, and Schneider had attended a dance the night of the accident. After the dance, about 1 o'clock in the morning, Schneider took his sister to her home and proceeded from there north on a county trunk highway to take his girl friend home. The highway was constructed of blacktop and ran north and south. The pavement was about twenty-one feet in width and on either side were grass shoulders five or six feet in width. The ditches on either side were a foot or two in depth. The road at the point of the collision was level for several hundred feet in each direction. The atmosphere was clear and the road was dry.

Schneider testified that he saw the lights of an approaching car almost a mile away and that when it reached a point on the highway about seventy-five feet ahead of him it suddenly came

over toward his side of the road. He applied his brakes, and the collision followed.

The application of the brakes on Schneider's car produced tire marks on the pavement for a distance of fifteen feet. They showed that the left wheels of his car were well east of the center (on his side) of the highway.

The evidence as to the course of the Oelke car showed that beginning sixty-nine feet north of the point of collision there were tire marks on the pavement starting in the west lane and crossing to the east, and that beginning fifty feet north of the point of collision there were gouges in the surface of the pavement indicating the contact of steel with the black-top, such as would be caused by the car turning over and rolling. Marks on the shoulder and in the ditch indicated that the Oelke car had run off the black-top onto the west shoulder and into the ditch prior to the time it first left marks on the black-top sixty-nine feet north of the point of collision.

The steel top of the Oelke car was crushed almost level with the top of the seats. The car was found upside down after the accident. The damage to the Schneider car consisted of a great dent on the top of the hood and a broken windshield. The bumper and the front end were relatively undamaged.

Further testimony could be reviewed, but enough has been stated to illustrate beyond question that the court properly granted the motion for a nonsuit. There was not the slightest evidence of negligence on the part of Schneider. The appellants' entire case is predicated upon the assumption that a jury would have been justified in finding that as the Oelke car lay overturned in the road it was struck by the Schneider car, that the impact of the collision caved in the top of the overturned car, thereby causing the death of Alfred Oelke, that Schneider saw the Oelke car approaching a mile away, that he was in a position to observe its erratic course prior to the accident and that had he maintained proper lookout, control and management, he could have avoided striking it.

The physical facts alone are sufficient to show that such could not have been the case. Had the Schneider car struck the Oelke car with sufficient force to completely cave in the top, there would have been considerable damage to the bumper and the front end of the Schneider car. Yet there was no such damage. As stated, the damage consisted of a large dent on the top of the hood of the Schneider car. That fact, together with the gouges on the pavement and the position in which the Oelke car was found, would tend to show that the Oelke car began overturning at a point fifty feet from the point of collision, that in overturning it completely collapsed the steel top and was in the process of rolling over when it hurdled through the air onto the top of the hood of the Schneider car.

There was no testimony as to the speed at which either car was traveling. The physical facts detailed above would indicate that neither was traveling at what might be termed a "snail's pace." The interval between the time the Oelke car is shown to have started upon its erratic course and the time of the accident must be calculated in terms of seconds. But no matter what interval may have elapsed, there is no basis for an inference that Schneider could have done anything that he did not do to avoid the accident.

There are two further contentions in appellants' brief, but neither is of sufficient import to merit discussion.

*By the Court.*—Judgment affirmed.