Thorp (Walter), Plaintiff, vs. Landsaw and another, Defendants and Appellants: Thorp (Edwin) and another, Defendants and Respondents.*

*October 11—December 15, 1948.*

---

* Motion for rehearing denied, with $25 costs, on February 15, 1949.

2

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar.*

For the respondents there was a brief by *Coe & Cameron* of Rice Lake, and oral argument by *William A. Cameron.*

ROSENBERRY, C. J.    On this appeal it is the contention of the appealing defendants that there was credible evidence to

4

support the finding of the jury as to the causal negligence of the defendant Edwin Thorp and for that reason the court erred in entering judgment dismissing the plaintiff's complaint as to him.

We shall state and consider only such testimony as is relevant to that issue.

On the 3d day of October, 1946, at about 3 : 30 o'clock in the afternoon, Edwin Thorp was driving his automobile in a westerly direction on Highway 70 at a point about four miles west of Spooner in Washburn county. At about the same time the defendant Landsaw was driving easterly on said highway' going toward Spooner. The accident happened on a straight black-topped road twenty-eight feet wide. As one approaches the place of the accident from the east, traveling west, the highway curves, and then proceeds straightaway for a distance of a mile to a mile and a half. The collision happened between one thousand and fifteen hundred feet west of the curve. As one approaches the place of collision from the west the highway is slightly downgrade for a short distance and then levels off for some distance west of the place of collision. At the place of collision there was a grassy shoulder three or four feet wide on each side of the highway. On the north side there was a gradual ditch fourteen to sixteen inches deep and approximately six to eight feet wide. There was a yellow line marking the center of the highway. The pavement was dry, the road in excellent condition and practically level for more than a mile.

In its memorandum opinion the trial court made a summary of the evidence and reasons for its construction, of which the following is the substantial part :

"Edwin Thorp was proceeding west and Miss Landsaw was proceeding east. According to Edwin Thorp the road was twenty-eight feet wide, and when he first saw Miss Landsaw, she was some distance to the west of him. That when he first saw her, which was at least one thousand or fifteen hundred

feet away, she was in the middle of the road, straddling the yellow line. That her car then returned to the south side of the yellow line and stayed there until just before the accident. That when she was fifty to sixty feet away from him, or west of him, she turned into his path, or his line of travel. That at the time he was traveling thirty-five to forty-five miles an hour, and that Miss Landsaw was traveling about thirty-five miles per hour. That from the time she turned across his path of travel until the accident was about one eighth of a second. That when Miss Landsaw's car was one thousand or fifteen hundred feet west of him, his father, who was riding with him and saw the Landsaw car shimmying, cautioned him and said 'Look out, there is a drunken driver, or there might be.' That at that time he was going forty-five to fifty miles an hour, and he lifted his foot off the gas and reduced his speed, but did not apply his brakes. . . .

"Emma Mae Landsaw testified that when she saw the Thorp car about a quarter or half a mile away, it was in the center of the road, but then it got over on the north side and stayed there until the time of the accident. That her car was on the south side of the highway until just shortly before the accident, when it swerved or turned to the north side; that she could not control it, and that she thought the tie rod broke, which prevented her from steering. She testified her speed was thirty-five miles per hour, and that Edwin Thorp was traveling fifty to sixty miles per hour.

"There was testimony that Edwin Thorp could have driven his car into the north ditch, or north shoulder, and would have had room to pass on the north side; that he did not apply his brakes, and there was testimony if he had stayed on his own side or the north side of the road, he could have got by.

"It seems to us that in this situation the emergency doctrine applies, and that the following cases are in point, bearing on the question of liability: *Watkins v. Watkins,* 210 Wis. 606; *Clark v. McCarthy,* 210 Wis. 631; *Schwab v. Martin,* 228 Wis. 45; *Frankland v. DeBroux,* 28 N. W. (2d) 256; *Oelke v. Schneider,* 250 Wis. 86.

"It seems to us that the accident was caused by Emma Mae Landsaw's car suddenly swerving in front of the car of Thorp. From the time she made this sudden swerve to the north side of the road, which was made according to the testimony, when she was either fifteen or twenty, or fifty to sixty feet from the

Thorp car, nothing that Thorp could have done would probably have avoided the accident. He was confronted with an emergency, and he took the course which he thought would avoid an accident, although later it might not prove to be the most prudent thing to do. If it was an emergency, he is not liable.

"It seems to us the only way in which any liability could attach to Thorp would be that if he neglected to do something he should have done prior to the time that the Landsaw car turned into his path of travel. When he first saw the Landsaw car some thousand feet away, according to his testimony, she was straddling the line. According to his father within one thousand feet the Landsaw car snaked across the center line two or three times. However, one cannot tell from this testimony whether it was one thousand feet away or one hundred feet from the Thorp car when it, the Landsaw car, crossed the yellow line."

It is considered that in reaching the conclusion it did the court did not apply the correct rule of law to the facts stated, to which other material facts might be added.

The court correctly instructed the jury as to the emergency rule. The instruction is as follows:

"An automobile driver who, by the negligence of another, and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury, is not guilty of negligence or want of ordinary care, if he makes such a choice as a person of ordinary prudence, placed in such position, might make, even though it appears afterward that he did not make the wisest or best choice." *Scharine v. Huebsch* (1931), 203 Wis. 261, 234 N. W. 358.

This rule of law is supported not only by Wisconsin decisions but by the decisions of the courts of last resort in at least thirty-seven jurisdictions (79 A. L. R. 1278).

The cases cited by the court in support of its conclusion that the emergency doctrine applies, support the rule of law as

stated. The difficulty is that the evidence in this case is such that reasonable minds may draw different inferences from it.

The record presented three questions of fact:

1. Was there an emergency with which Thorp was suddenly confronted?

2. Was the defendant Thorp negligent in a manner which wholly or in part created the emergency?

3. Might a person of ordinary prudence, if placed in the same position, make the same choice?

Ordinarily these are questions for the jury. *Siegl v. Watson* (1923), 181 Wis. 619, 195 N. W. 867; *Rebholz v. Wettengel* (1933), 211 Wis. 285, 248 N. W. 109; *Haskins v. Thenell* (1939), 232 Wis. 97, 286 N. W. 555; *Hein v. Huber* (1934), 214 Wis. 230, 252 N. W. 692; *Watkins v. Watkins* (1933), 210 Wis. 606, 245 N. W. 695; *Pierner v. Mann* (1946), 249 Wis. 469, 25 N. W. (2d) 83; *Basile v. Milwaukee* (1947), 250 Wis. 35, 26 N. W. (2d) 168; 17–18 Huddy, Cyc. Automobile Law (9th ed.), p. 280, sec. 144, and cases cited. Note 44 to sec. 144 in Supplement.

Not all of these cases are upon the precise point but they are relevant to the broad question involved.

Whether in a given case there was an emergency confronting the driver of an automobile, whether his negligence created the emergency in whole or in part, and whether a person of ordinary prudence might have pursued the same course under the same circumstances, are questions of fact for the jury where the evidence in the case is such that the minds of reasonable persons might differ as to the inferences to be drawn therefrom. The first case cited by the trial court is to that effect.

The case of *Schwab v. Martin* (1938), 228 Wis. 45, 279 N. W. 699, was an action by a guest against an automobile driver and it was held that even if the defendant was negligent that the guest assumed the risk of his negligent failures in the field of skill and judgment.

In the case of *Oelke v. Schneider* (1947), 250 Wis. 86, 26 N. W. (2d) 170, cited by the court, it was held that the evidence was not sufficient to establish negligence on the part of the driver.

In *Frankland v. De Broux* (1947), 251 Wis. 210, 217, 28 N. W. (2d) 256, it was held that the driver,

"Bauman, was confronted with an emergency created by the plaintiff, to which no act on his part contributed. He cannot be charged with negligence as to control merely because he did not stop his truck if he could have stopped it, or did not turn farther to the right if this was possible, when he took the course which on the spur of the moment seemed to be the only thing he could do to avoid the impending collision."

A trial court is not justified in setting aside a verdict either in whole or in part and directing judgment if there is credible evidence to support the findings. The crucial question is whether the evidentiary facts are practically without dispute, whether these facts reasonably support the jury's conclusion of ultimate fact drawn therefrom. *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941) 236 Wis. 419, 424, 295 N. W. 755.

In *Behling v. Wisconsin Bridge & Iron Co.* (1914) 158 Wis. 584, 589, 149 N. W. 484, the rule is stated thus:

"While a jury finding against the clear preponderance of the evidence, presents a case for consideration by the trial judge within his discretionary right to grant a new trial, he is not required to do so, nor to change the finding to accord with the greater evidentiary weight. The latter is proper only when the evidence is so convincing as to leave no room, in any reasonable view, for conflicting inferences. In that situation the real truth of the matter appears as matter of law, leaving no legitimate jury question."

The *Behling Case* deals extensively with the law relating to the power of a trial court to deal with the verdict on motions for a new trial, and the power of a court to set aside jury findings and direct judgment.

In addition to the facts already appearing in this opinion and the opinion of the trial court it appears that the point of contact of the two cars was the corners of the right front fenders and that the point of contact was from three to four feet south of the center line of the highway; the defendant Thorp testified that at the time of the impact his left front wheel was over the center line about a foot and that both cars were over the center line; Wilson testified that the Thorp car got south of the yellow line four or five feet and that there was not room for the Thorp car to go to the left or south of the Landsaw car without interfering with Wilson's car which was behind the Landsaw car. The plaintiff's father testified:

"I observed this car that was approaching over at one time on the north side of the yellow line down the road aways to the west several times and I said to Edwin that it looked as if that driver might be a drunken driver. He didn't slacken his speed up until the time of the accident. No and he continued that same speed. . . . He should have slowed down. . . . He swung across the center line of the highway. The highway at that point is twenty-eight feet wide. There is twenty-eight feet of black-top and there is a shoulder to the north and north of the shoulder there is a shallow ditch."

Defendant Landsaw testified:

"At the time of the accident my left front fender was over about eight to twelve inches and the Thorp car turned over to the south side of the road and his right hit my right. . . . Immediately before the collision the driver of the Thorp car made no effort to stop. The collision took place with reference to the center line of the highway close to my side of the road. . . . I don't think the rear wheels were over the center line and I don't think they ever were."

There is other testimony along the same line. There is also in the record testimony in conflict with it.

Upon all the facts the jury found the defendant Thorp causally negligent in regard to speed, management, position of his car on the highway, and in turning his car to the left just before the cars collided. It is considered that the jury could reason-

ably draw these inferences from the whole evidence  The court did not submit to the jury the question of whether or not an emergency existed, but assuming that it did exist, the jury must have found that the speed at which Thorp was traveling wholly or in part created the emergency; that his failure to change his position on the highway was a failure to exercise the care that an ordinarily prudent person would exercise under the same circumstances; that in turning his car to the left just before the cars collided he failed to make the choice that an ordinarily prudent person would make under the circumstances.   It is considered that the evidence in the record sustains these findings of the jury, and therefore the court was in error in changing the answers to the special verdict in respect to the negligence of Edwin Thorp and directing judgment in his favor.   The result might be different if instead of directing judgment the court had granted a new trial.

*By the Court.*—That part of the judgment appealed from is reversed and the cause is remanded with directions to reinstate the verdict and enter judgment in favor of the plaintiff Thorp against the defendant Edwin Thorp and Metropolitan Casualty Insurance Company.

BROADFOOT, J., took no part.