GIMBEL, Respondent, vs. GOLDMAN and others, Defendants: WALDSCHMIDT and another, Appellants.

*October 12—November 15, 1949.*

For the appellants there was a brief by *D. J. Regan*, attorney, and *T. J. Regan* of counsel, both of Milwaukee, and oral argument by *T. J. Regan*.

*Jack J. Gimbel* of Milwaukee, for the respondent.

MARTIN, J. The trial court found the defendant, Alvin Waldschmidt, causally negligent as to speed, lookout, and management and control, and the first question is whether there is credible evidence to support these findings.

The testimony of the parties to this action was that said defendant was traveling north at a speed of thirty to thirty-five miles per hour. Appellants have cited *Clark v. McCarthy* (1933), 210 Wis. 631, 246 N. W. 326, wherein it was held that speed alone is not causal, but where it contributes to want of control or to presence on the wrong side of the road it may be considered one of the causes of the collision. *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 295 N. W. 755, is also distinguishable for in that case the bus driver did not create the dangerous situation.

In the present case, Waldschmidt testified that he was traveling in the tracks in the center of the road but when he reached a point half way up the hill, he pulled over to the east side of the road. Harold J. Gimbel testified that when he first saw the Waldschmidt automobile it was about ten feet from the crest of the hill and was proceeding in the

two grooves. Stuart Goldman also testified that Waldschmidt was traveling in the two tracks in the center of the road when he first saw the car fifteen feet from the crest.

From this testimony the trial court properly found that the speed of defendant, Alvin Waldschmidt, was a proximate cause of the accident. He traveled in the worn paths in the center of the road at a speed that was excessive as he approached the blind spot at the crest of the hill.

As to lookout, the crest of the hill was a blind spot where a driver proceeding in one direction could not see any traffic in the other direction until practically at the crest. However, Waldschmidt rode the two tracks in the center of this narrow, gravel road until he was approximately ten or fifteen feet from the crest of the hill. His failure to be in his own lane of traffic and to reduce his speed indicate his negligence with respect to lookout. His speed under the conditions then and there existing prevented him from making an efficient and proper lookout in time to do anything to avoid the collision.

*Watkins v. Watkins* (1933), 210 Wis. 606, 245 N. W. 695, is distinguishable for in that case the defendant had a clear right of way and was traveling at a reasonable rate of speed on a dry concrete pavement up to the instant before the accident.

Since the findings are proper that the defendant, Alvin Waldschmidt, was negligent with respect to speed and lookout, it follows that he was negligent as to the management and control of his automobile. He placed himself in a position where it became impossible to avoid the collision. The appellants contend that when Waldschmidt saw the Goldman automobile, he turned his car sharply to the right, sounded his horn, and stopped within fifteen to twenty feet from the point of impact. Waldschmidt testified that after the impact his car came to a stop parallel with the road, with the right wheels in the ditch about two feet from the east edge of the gravel. However, Charles H. Vande Zande, who arrived

at the scene of the accident about forty-five minutes later, but before the Waldschmidt car had been moved, testified that the Waldschmidt car was not in the ditch but on the gravel portion of the road.

Appellants contend that the plaintiff, Harold J. Gimbel, did not assume the risk of his host's negligence.

The facts are these: Plaintiff had driven the road in question at least fifteen times during the months June, July, and up to August 16, 1946, and was familiar with the condition of the road. He had ridden with Goldman previously and was familiar with his method of driving. The road had a number of hills and Stuart Goldman traveled in the tracks in the center of the road over the entire route. As they approached the crest of the hill where the collision occurred, they could not see approaching northbound traffic. Plaintiff did not protest that Goldman was driving in a dangerous manner until a split second before the accident when plaintiff saw the Waldschmidt car and told Goldman to pull over. The trial court made the following findings:

"5. The defendant, Stuart Goldman, was negligent in that during said entire trip he traveled as above indicated in the center portion of the road or in said 'tracks' as they changed direction, even when traveling over hills, and in not exercising due care and caution to observe approaching traffic. Such negligence was an efficient cause of the collision.

"6. Plaintiff was familiar with and acquiesced in such method of driving and he assumed the risk of the injury caused by such negligence of Stuart Goldman."

Appellants contend that a motorist may travel in the center of the road provided he does not meet any oncoming vehicles and in the event he does encounter vehicles traveling in the opposite direction, he must seasonably turn to the right. We agree with this contention. However, the motorist's speed, lookout, and management and control must be such that he can turn to his proper side of the road to avoid

an accident. The cases cited by appellants are distinguishable. In the present case, Stuart Goldman not only traveled in the center of the road just prior to the collision, but he did so while proceeding up at least three steep hills, each one creating a blind spot at the crest of each hill. Plaintiff acquiesced in this method of driving and, therefore, assumed the risk of his host's negligence. The evidence is amply sufficient to support the findings of the trial court.

Appellants assert that a tort-feasor is entitled to an offset of any payment made by a joint tort-feasor under a covenant not to sue or under a release which reserves the right to proceed against a codefendant.

Plaintiff, Harold J. Gimbel, settled his claim with defendants, Stuart Goldman and his insurance carrier, on February 5, 1948. The stipulation and order dismissed action as to them. However, these defendants were still in the suit at trial by way of defendants', Alvin Waldschmidt and his insurance carrier, cross complaints.

It was stated in *Standard Accident Ins. Co. v. Runquist* (1932), 209 Wis. 97, 102, 244 N. W. 757:

> "It is clearly established in Wisconsin that in order for one joint tort-feasor to have contribution against another, it must be established that they have been subjected to a *common liability*." (Italics ours.)

In *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 532, 252 N. W. 721, it was held that the driver of the automobile not being liable under the circumstances for the injuries to his guests resulting from his negligence, there was no such common liability with others negligently causing the injuries as was essential to render him liable for contribution to such others.

*Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 27 N. W. (2d) 468, cited by appellants, is distinguished in *Papenfus v. Shell Oil Co.* (1949), 254 Wis. 233, 239, 35 N. W. (2d) 920, where it was held:

"In a long line of decisions this court has held that payments voluntarily made to an injured person inure to his benefit and not to the benefit of a tort-feasor whose wrongful act caused the injury, . . .

"While under the law of accord and satisfaction a settlement with one joint tort-feasor bars recovery against all other tort-feasors for the same cause, the granting of a covenant not to sue does not have such effect."

In the *Papenfus Case, supra,* the plaintiff settled his claim with Seaver, one of the defendants, before trial for $1,900. The trial court found Seaver not liable and stated:

"That the payment by Seaver in this case must be considered a gratuity becomes clear from the fact that the jury found him not to be a joint tort-feasor. It is true that the payment was made by Seaver's insurance carrier under the fear that he might be found by the jury to be a joint tort-feasor, and that it was accepted by the plaintiff no doubt in fear that he would not. The jury finding established that he had no duty to pay. The payment, being a voluntary contribution to settle any possible liability to the plaintiff, under the cases must be held to inure to the plaintiff and not to the defendants Tilton and Shell Oil Company. The situation is quite different where, as in the *Haase Case, supra,* the person who got the covenant not to sue was ultimately found to be a tort-feasor."

The defendant, Alvin Waldschmidt, was found negligent as to speed, lookout, and management and control, and these acts of negligence were the proximate cause of plaintiff's injuries. It was also found that the plaintiff assumed the risk of his host's negligence with respect to lookout. Consequently, plaintiff could not recover against Stuart Goldman due to the theory of assumption of risk and there could be no common liability between Stuart Goldman and Alvin Waldschmidt in regard to plaintiff's injuries.

The findings of the trial court are supported by the evidence and will not be disturbed on this appeal.

*By the Court.*—Judgment affirmed.